[No. B001383. Second Dist., Div. Seven. June 28, 1985.]

DAVID GOMEZ, Plaintiff and Appellant, v.
VOLKSWAGEN OF AMERICA, INC., et al.,
Defendants and Appellants.

922

COUNSEL

Martin & Harrison, Jeffrey B. Harrison and Gerald H. B. Kane, Jr., for Plaintiff and Appellant.

Herzfeld & Rubin, Richard W. Greenbaum and Michael A. Zuk for Defendants and Appellants.

## OPINION

EARLY, J.*—Plaintiff David Gomez appeals from an order sustaining without leave to amend a demurrer to a cause of action for the bad faith breach of the covenant of good faith and fair dealing in an express written warranty and from an order granting defendants a new trial; defendants appeal from the judgment for plaintiff and from an order denying their motion for judgment notwithstanding the verdict.

Plaintiff purchased a new 1975 Porsche 914 automobile in January 1975 from defendant Century Porsche-Audi (Century) which is not a party to this appeal. The automobile was manufactured jointly by defendant Dr. Ing. h. c. F. Porsche, A.G. (Porsche) and defendant Volkswagenwerk Aktiengesellschraft (VWAG) in Germany and was imported by defendant Volkswagen of American, Inc. (VWoA). Defendant paid $7,882 in cash. Plaintiff also received a written warranty issued by VWoA reading in significant part as follows:

"Porsche Audi warrants that every 1975 model Porsche vehicle imported by it and sold as a new vehicle to a retail customer will be free from defects in material and workmanship for 12 months after the date of delivery of the vehicle to the original retail customer or until the vehicle has been driven 20,000 miles, whichever comes first. . . ."

On May 10, 1975, a Saturday, with about 4,500 miles on the car, fire broke out internally and severely damaged it when plaintiff attempted to start it. At the time plaintiff had no fire insurance. He immediately notified Century and two days later the car was towed to Century's premises. Defendants gave plaintiff a loaner automobile which he kept free of charge until December 1975. Plaintiff repeatedly demanded that defendants replace or repair his car without cost to him pursuant to the warranty. Defendants refused to do so, contending that the fire was not the result of a "defect" within the meaning of the warranty. In mid-August 1975 plaintiff purchased a replacement Saab automobile.

On May 5, 1976, plaintiff filed his original complaint herein setting forth causes of action in strict product liability, negligence, breach of express warranty, breach of implied warranty and a fifth alleged cause of action entitled "Bad Faith." In this fifth cause of action plaintiff pleaded that he had purchased and paid for said Porsche, together with the warranty quoted above, from defendants who had designed and manufactured the car defectively, resulting in a dangerously leaking gasoline hose in the engine com-

---

*Assigned by the Chairperson of the Judicial Council.

partment, a fact known to defendants which proximately resulted in the substantial destruction of the car, and that plaintiff forthwith presented defendants with the car, demanding that they repair or replace it which defendants wrongfully refused to do. Plaintiff prayed for compensatory and punitive damages.

After answering the complaint, the three defendants moved for judgment on the pleadings on the ground that the fifth cause of action failed to state facts sufficient to constitute a cause of action. This motion was granted with 60 days leave to amend.

On February 7, 1980, plaintiff filed his first amended complaint in substantially the same form as the original. The allegations of the fifth cause of action therein were substantively unchanged, being merely paraphrased. This time defendants demurred generally to the fifth cause of action and the trial court sustained the demurrer without leave to amend.

Plaintiff sought a review of the order sustaining the demurrer without leave to amend in this court by petition for an extraordinary writ which was denied by the court with the following order: "The petition filed May 22, 1980, has been considered and is denied for failure to allege facts showing petitioner entitled to extraordinary relief in this court." A hearing in the Supreme Court was sought and denied without comment. Defendants contend that this constitutes a binding adjudication on appeal. ■ This is so only where the appellate court renders a decision and, in deciding the appeal, states a principle or rule of law necessary to the decision which then becomes the law of the case. Here, the appellate court did not decide anything regarding the merits of plaintiff's case; it merely ruled that, on the facts set forth in his petition, he was not entitled to extraordinary relief. Defendants' contention is mistaken. (*Hagan* v. *Superior Court* (1962) 57 Cal.2d 767, 770 [22 Cal.Rptr. 206, 371 P.2d 982]; *Rosato* v. *Superior Court* (1975) 51 Cal.App.3d 190, 230 [124 Cal.Rptr. 427].)

In neither complaint nor in argument was reference made to the Song-Beverly Consumer Warranty Act, chapter 1 of title 1.7 of the Civil Code, sections 1790 to 1795.5 inclusive, enacted in 1970 (Stats. 1970, ch. 1333 § 1, p. 2478). In each instance plaintiff argued only that he had stated a tort cause of action for violation by defendants of the covenant of good faith and fair dealing in the written warranty for which punitive damages might be recovered. At that time, such a tort cause of action had been recognized by California courts only for willful breaches of the covenant in insurance contracts (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141] and cases cited at p. 818) and in the employment relationship (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167,

179, fn. 12 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]). It has also been recognized in the bank depositor-bank relationship. (*Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511 [209 Cal.Rptr. 551], mod. 164 Cal.App.3d 493a.) However, the fifth cause of action in each complaint clearly stated a cause of action under Civil Code section 1794 which then provided as follows: "Any buyer of consumer goods injured by a willful violation of the provisions of this chapter may bring an action for the recovery of damages, and (a) Judgment may be entered for three times the amount at which the actual damages are assessed, and (b) Reasonable attorney fees may be awarded."[1] Plaintiff had pleaded that he was such a buyer who was injured by a "willful" violation of Civil Code section 1793.2, subdivision (b) which in pertinent part requires that with respect to consumer goods sold in this state for which the manufacturer has made an express warranty and service and repair facilities are maintained in this state (undisputed herein) and "repair of the goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative." In subdivision (d) the section further provides that: "(d) Should the manufacturer or its representative in this state be unable to service or repair the goods to conform to the applicable express warranties, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity."

 A general demurrer should never be sustained if a pleading states a cause of action on any theory. (*Brousseau* v. *Jarrett* (1977) 73 Cal.App.3d 864, 870-871 [141 Cal.Rptr. 200].) All that is necessary against a general demurrer is to plead facts entitling the plaintiff to some relief. (*Domino* v. *Mobley* (1956) 144 Cal.App.2d 24, 27 [300 P.2d 324].) If the facts pleaded will support any legal theory of recovery, it is immaterial that the plaintiff may have misconceived the theory of his cause of action. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Clark* v. *Lescher* (1951) 106 Cal.App.2d 403, 408 [235 P.2d 71].) That plaintiff prayed for punitive damages instead of the measure allowed by Civil Code section 1794 is not material. Parties are "entitled to any relief warranted by the facts pleaded, and their failure to ask for the proper relief is not fatal." (*MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 815 [161 P.2d 449].) A defective prayer is simply irrelevant to the question whether a cause of action is stated. (*Stoney Creek Orchards* v. *State of California* (1970) 12 Cal.App.3d 903, 907-908 [91 Cal.Rptr. 139].)

---

[1]As amended by Statutes 1982, chapter 385, section 2, page 1716, buyer's remedy for breach of an express warranty remain substantially unchanged.

Because the fifth cause of action of the first amended complaint stated a legally valid cause of action, the demurrer should not have been sustained; hence the judgment must be reversed in its entirety for a new trial on all issues. Appellant has appealed only from the trial court's adverse ruling on the fifth cause of action, not from the jury verdict on the other causes of action set forth in the complaint. However, mindful that there may be only a single judgment herein, that the jury returned a general verdict without special findings, and that the facts alleged in the fifth cause of action are so interwoven with those pleaded in the other causes of action that the determination regarding the fifth cause of action involved consideration of the facts underlying the others, in this case the entire judgment must be vacated and the entire case retried in order to achieve a just result. (*Everly Enterprises, Inc.* v. *Altman* (1960) 54 Cal.2d 761, at page 765 [8 Cal.Rptr. 455, 356 P.2d 199] and cases therein cited; 5 Cal.Jur.3d, Appellate Review, § 592, p. 313.)

This, however, does not resolve the question whether the fifth cause of action also states a tort cause of action which the courts of this state should recognize for wrongful breach of the covenant of good faith and fair dealing in the warranty, a breach for which under appropriate circumstances punitive damages may be awarded under Civil Code section 3294. So far, California has not yet extended this tort remedy to commercial contracts outside the insurance area and the employment relationship. But should it do so as plaintiff urges?

Our Supreme Court has recently given substantial guidance in this area. In *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, at pp. 768-770 [206 Cal.Rptr. 354, 686 P.2d 1158], the opinion by The Court reviews the present state of the law:

"It is well settled that, in California, the law implies in *every* contract a covenant of good faith and fair dealing. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 576, p. 493; see, e.g., *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173] ['*in every contract,* including policies of insurance, there is an implied covenant of good faith and fair dealing . . . .' (Italics added.)]) Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. (1 Witkin, *op. cit. supra,* at p. 493.)

"California courts have recognized the existence of this covenant, and enforced it, in cases involving a wide variety of contracts. Courts have

provided contract remedies for breach of the covenant in such diverse contracts as agreements to make mutual wills (*Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 564 [212 P.2d 878] [specific performance]), agreements to sell real property (*Osborne* v. *Cal-Am Financial Corp.* (1978) 80 Cal.App.3d 259, 266 [145 Cal.Rptr. 584] [recission]), employee incentive contracts (*Foley* v. *U. S. Paving Co.* (1968) 262 Cal.App.2d 499, 505 [68 Cal.Rptr. 780] [damages]), leases (*Cordonier* v. *Central Shopping Plaza Associates* (1978) 82 Cal.App.3d 991, 1000, 1002 [147 Cal.Rptr. 558] [same]), and contracts to provide utility services (*Masonite Corp.* v. *Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 9 [135 Cal.Rptr. 170] [same]).

"In the seminal cases of *Comunale* v. *Traders & General Ins. Co.*, *supra*, 50 Cal.2d 654, and *Crisci* v. *Security Ins. Co.*, *supra*, 66 Cal.2d 425, this court held that a breach of the covenant of good faith and fair dealing by an insurance carrier may give rise to a cause of action in tort as well as in contract. (*Crisci, supra*, at p. 432.)

"While the proposition that the law implies a covenant of good faith and fair dealing in all contracts is well established, the proposition advanced by Seaman's—that breach of the covenant always gives rise to an action in tort—is not so clear. In holding that a tort action is available for breach of the covenant in an insurance contract, we have emphasized the 'special relationship' between insurer and insured, characterized by elements of public interest, adhesion, and fiduciary responsibility. (*Egan* v. *Mutual of Omaha Ins. Co.*, *supra*, 24 Cal.3d at p. 820.) No doubt there are other relationships with similar characteristics and deserving of similar legal treatment.

"When we move from such special relationships to consideration of the tort remedy in the context of the ordinary commercial contract, we move into largely uncharted and potentially dangerous waters. Here, parties of roughly equal bargaining power are free to shape the contours of their agreement and to include provisions for attorney fees and liquidated damages in the event of breach. They may not be permitted to disclaim the covenant of good faith but they are free, within reasonable limits at least, to agree upon the standards by which application of the covenant is to be measured. In such contracts, it may be difficult to distinguish between breach of the covenant and breach of contract, and there is the risk that interjecting tort remedies will intrude upon the expectations of the parties. This is not to say that tort remedies have no place in such a commercial context, but that it is wise to proceed with caution in determining their scope and application.

". . . . . . . . . . . . . . . . . . . . .

"It has been held that a party to a contract may be subject to tort liability, including punitive damages, if he coerces the other party to pay more than is due under the contract terms through the threat of a lawsuit, made ' "without probable cause and with no belief in the existence of the cause of action." ' (*Adams* v. *Crater Well Drilling, Inc.* (1976) 276 Ore. 789 [556 P.2d 679, 681].) There is little difference, in principle, between a contracting party obtaining excess payment in such manner, and a contracting party seeking to avoid all liability on a meritorious contract claim by adopting a 'stonewall' position ('see you in court') without probable cause and with no belief in the existence of a defense. Such conduct goes beyond the mere breach of contract. It offends accepted notions of business ethics. (See *Jones* v. *Abriani* (1976) 169 Ind. 556 [350 N.E.2d 635].) Acceptance of tort remedies in such a situation is not likely to intrude upon the bargaining relationship or upset reasonable expectations [*sic*] of the contracting parties." (Fns. omitted.)

Without deciding whether breach of the covenant of good faith and fair dealing would support tort remedies in the ordinary commercial context, the Supreme Court achieved the same result in the *Seaman's* case by recognizing a tort action for bad faith breach of contract when the defendant "in bad faith and without probable cause" denies the very existence of the contract, something the defendants herein are not accused of doing. The opinion squarely states that there is little difference between a defendant who seeks "to avoid all liability on a meritorious contract claim by adopting a 'stonewall' position ('see you in court') without probable cause and with no belief in the existence of a defense," which fairly paraphrases plaintiff's allegations against the defendants in the fifth cause of action herein, and the party to a contract who was held subject to tort liability, including punitive damages, for coercing the other party to the contract to pay more than was due by threatening a lawsuit even though lacking all belief in the existence of a cause of action.

If the Legislature had not acted, the argument for extending a tort remedy, including punitive damages, to the plaintiff herein on the fifth cause of action would be most persuasive.[2] However, the Legislature did so act when it adopted the Song-Beverly Consumer Warranty Act in 1970. There is nothing before the court to indicate that the remedy afforded by Civil Code section 1794 is inadequate either in the amount of damages that a meritorious plaintiff may recover or as a deterrent to the proscribed conduct. Such inadequacy is, of course, a cornerstone of the judicial policy supporting a

---

[2]For an incisive discussion of this problem see Van Patten & Willard, *The Limits of Advocacy: A Proposal for the Tort of Malicious Defense in Civil Litigation* (1984) 35 Hastings L.J. 891.

tort remedy for violation of the covenant of good faith and fair dealing found in every contract. (*Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109, 1117 [207 Cal.Rptr. 123].) Believing that the section 1794 remedy is adequate, we are impelled to heed the admonition of the Supreme Court "to proceed with caution" when moving into such "largely uncharted and potentially dangerous waters" and hold that the fifth cause of action states facts which, if proved, entitle plaintiff only to the remedy afforded by that section.

Reversal of the judgment makes it unnecessary to consider plaintiff's other contentions and the issues raised by the cross-appeal. The trial court is directed to conduct further proceedings consistent with this opinion.

Reversed.

Lillie, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied July 26, 1985, and the petition of plaintiff and appellant for review by the Supreme Court was denied October 24, 1985. Bird, C. J., was of the opinion that the petition should be granted.