[No. B029789. Second Dist., Div. Seven. Apr. 21, 1988.]

EARL ROGOFF, Plaintiff and Appellant, v.
DONALD A. GRABOWSKI, Defendant and Respondent.

COUNSEL

Harold Kippen for Plaintiff and Appellant.

Shelden & Kulchin, Aaron E. Shelden and John Viljoen for Defendant and Respondent.

OPINION

LILLIE, P. J.—Plaintiff appeals from a judgment (order of dismissal) entered after the trial court sustained defendant's demurrer to plaintiff's second amended complaint without leave to amend. We address the question of whether the breach of the covenant of good faith and fair dealing in a contract for the rental of a limousine gives rise to an action in tort.

FACTS

Because a demurrer necessarily constitutes an admission of the material and issuable facts properly pleaded in the complaint (*Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340, 347 [157 Cal.Rptr. 791]), we deem the following alleged facts to be true: In May 1985

plaintiff entered into an oral agreement with defendant[1] whereby plaintiff rented from defendant a limousine stocked with alcoholic beverages, and a driver. Defendant knew that plaintiff rental rented the limousine and driver to take him and his wife to a cocktail and swimming party; that he planned to drink alcoholic beverages both in the limousine and at the party; and so that plaintiff would not have to worry about driving a vehicle, defendant was to be at plaintiff's service throughout the day until the party ended and then was to return plaintiff and his wife to their home. Defendant took plaintiff and his wife to the party. For safekeeping, plaintiff gave his brief-case to the driver. In the briefcase were plaintiff's wallet, credit cards, money, keys, medication for his wife, and a change of clothing for him and his wife. While at the party, plaintiff and others would from time to time enter the limousine to drink alcoholic beverages.

Without notice or just cause, the driver left the party with the limousine and plaintiff's personal effects, but without plaintiff or his wife, who were left at the party inebriated, clad only in bathing clothes, and with no means to get home. Such conduct, he alleges, constituted not only a breach of the oral agreement, but a violation of the covenant of good faith and fair dealing implied in such agreement. For five or six hours, plaintiff attempted to have defendant return his personal effects, but defendant refused to do so. Finally, police officers accompanied plaintiff to defendant's place of business where plaintiff saw his personal effects thrown about the premises. Without his permission, defendant had removed plaintiff's credit cards from his wallet and had prepared a charge slip for the rental of the limousine, which charges included a $49 gratuity. Defendant would not allow plaintiff to remove his personal property until he signed the charge slip, and plaintiff did so. Upon an examination of his property, plaintiff discovered that $325 in cash and some keys were missing from his wallet. In the second amended complaint, containing a single count labeled "tortious breach of covenant of good faith and fair dealing," plaintiff seeks $100,000 in damages for great mental anguish, mortification, humiliation and shame; he also alleges that the acts of defendant were willful, wanton, malicious and oppressive and justify the award of $100,000 in punitive damages.

Defendant demurred both generally and specially to the complaint. The court sustained the demurrer without leave to amend and then ordered the cause dismissed. Plaintiff filed timely notice of appeal from the order of dismissal.

---

[1] Although the second amended complaint identified defendant as Starlite Limousine Service, a California corporation, the demurrer was filed on behalf of "Donald A. Grabowski, dba Starlite Limousine Service." We thus deem the references in the pleading to Starlite Limousine Service to refer to the demurring defendant.

Our record does not contain the original or the first amended complaint; all references are therefore to the second amended complaint.

## I

### STANDARD OF REVIEW

■ When the trial court sustains a demurrer without leave to amend in general terms, we must assume that the court ruled only on the general demurrer and not on the special demurrer. (*Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 544 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R.3d 1].) ■ In reviewing an order sustaining a demurrer, we are required to construe the complaint liberally to determine whether, assuming the facts pleaded to be true, a cause of action has been stated. (*Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109, 1115 [207 Cal.Rptr. 123].) If the facts pleaded will support any legal theory of recovery, it is immaterial that the plaintiff may have misconceived the theory of his cause of action. (*Gomez* v. *Volkswagen of America, Inc.* (1985) 169 Cal.App.3d 921, 925 [215 Cal.Rptr. 507].) Parties are entitled to any relief warranted by the facts pleaded and their failure to ask for the proper relief is not fatal. (*Ibid.*)

## II

### NO EXTENSION OF TORT LIABILITY IN INSTANT CASE

■ In arguing for recognition of tort liability under the facts of the instant case, appellant contends that "[o]rdinary contract or conversion damages—the cost of limousine service or the value of the personal property converted—certainly are not adequate to deter [respondent] from repeating such behavior," and that such recovery will not make him "whole" for the emotional distress suffered as a result of his "ordeal." Because appellant has adequate breach of contract remedies, and possibly an adequate statutory remedy, we conclude the trial court properly declined to extend tort liability for breach of the implied covenant of good faith and fair dealing in the instant contract.

■■ While the proposition that the law implies a covenant of good faith and fair dealing in all contracts is well established in California (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158]), what is not clear is when the breach of that covenant gives rise to an action in tort. In *Seaman's,* the court cautioned against extending tort liability for breach of the implied covenant of good faith and fair dealing beyond parties with special relationships to ordinary commercial contracts and identified several reasons for such different treatment. First, in cases involving insurance contracts, the court has emphasized the " 'special relationship' between insurer and insured, characterized by elements of public interest, adhesion, and fiduciary

responsibility." (36 Cal.3d at p. 768.) In commercial contracts, on the other hand, "parties of roughly equal bargaining power are free to shape the contours of their agreement . . . . They may not be permitted to disclaim the covenant of good faith but they are free, within reasonable limits at least, to agree upon the standards by which application of the covenant is to be measured." (*Id.,* at p. 769.) Moreover, in commercial contracts, "it may be difficult to distinguish between breach of the covenant and breach of the contract, and there is the risk that interjecting tort remedies will intrude upon the expectations of the parties." (*Ibid.*)[2]

In *Seaman's,* a case involving a dispute between a dealer in ship supplies and equipment and an oil supplier, the court did not decide the "broad question" of whether the plaintiff could predicate tort liability on a breach of the implied covenant, but held only that "a party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." (36 Cal.3d at p. 769.)

One court has characterized the above language in *Seaman's* as creating a "new intentional tort" pursuant to which it is irrelevant whether a special relationship exists or not. (*Quigley* v. *Pet, Inc.* (1984) 162 Cal.App.3d 877, 890 [208 Cal.Rptr. 394].) The court in *Seaman's* did not purport to define the tort cause of action for breach of the implied covenant; however, the language defining the "new intentional tort" has striking similarities to the language in prior cases which had defined the tort of breach of an implied covenant of good faith and fair dealing as bad faith conduct, *extraneous* to

---

[2] The *Seaman's* court is apparently not alone in failing to offer a satisfying explanation for the judicial disinclination to extend the tort beyond the insurance context. One commentator, in lamenting the rather unpersuasive rationales offered by courts, noted that "the unexplained judicial reluctance to impose tort liability upon those who, in bad faith, breach contractual obligations is not only understandable but reflects a perceived awareness of, and faithfulness to, one of the most poorly kept secrets in legal history: Bad faith breach of contract, if defined as an intentional breach motivated by crass economic self-interest, has been, despite a clamoring of moral credos to the contrary, a judicially accepted staple of our system of commercial law. . . . [A] close scrutiny of commercial law doctrine, and the briefest scrutiny of commercial practice, makes it transparently clear that our system not only sanctions such bad faith breaches, but, with limitations, actually encourages them. . . . [¶] The social policy begins with a recognition that if breaches are too harshly sanctioned, there will be deterrence not only of breach but of the execution of contracts. Therefore, damages must not be so oppressive as to discourage the formation of binding commercial agreements. But far more important is an awareness that intentional breaches of contract often promote the economic efficiency of society. To the extent the promisor's pecuniary gains from breach exceed the promisee's pecuniary injuries, the costs of production have been reduced. Were legal liability to exceed the promisee's pecuniary injuries, an efficient reallocation of resources would be discouraged at societal expense." (Diamond, *The Tort of Bad Faith Breach of Contract: When, If at All, Should It Be Extended Beyond Insurance Transactions?* (1981) 64 Marq.L.Rev. 425, 433, 436-437, fns. omitted.)

the contract, with the motive intentionally to frustrate the enjoyment of contract rights. (*Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623]; and see *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 479 [199 Cal.Rptr. 613].) The majority in *Seaman's* cites *Sawyer* with approval (see 36 Cal.3d at p. 770), thus intimating that the cause of action it found to exist in *Seaman's,* based in part on principles in *Sawyer,* may be a subset of, or one species of, the tort of breach of the implied covenant.[3] (See *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1170 [226 Cal.Rptr. 820].)

The instant complaint fails to contain allegations satisfying the elements of the "new intentional tort" enunciated in *Seaman's* as there is no allegation that respondent denied in bad faith and without probable cause that the contract exists. It is also unclear from the present pleading whether appellant is claiming as tortious any of respondent's conduct other than leaving him and his wife at the party, which conduct appellant expressly states "violated the covenant of good faith and fair dealing" implied in his oral contract. Although the complaint goes on to detail his attempts to have respondent return his personal effects, his enlisting the aid of the police, and the events at respondent's place of business, it does not characterize such acts as in breach of the implied covenant but merely concludes that "said conduct" proximately caused him mental distress.

Nor does the instant pleading satisfy the *Sawyer* court's definition of the tort of breach of the implied covenant, as there is no allegation of conduct extraneous to the contract. Conceivably, the limousine driver may have known the contents of the briefcase and may have intended to drive off with appellant's clothes and wallet so as to frustrate appellant's enjoyment of contract rights as well as to deprive appellant of the means to "cover" for the breach by hiring another limousine or taxi. Such facts, however, are not alleged, and given the nature of the contract, such facts would be intrinsic and not extrinsic to the oral contract. We thus conclude that neither *Seaman's* nor *Sawyer* supports a tort theory of recovery for breach of the implied covenant of good faith and fair dealing in the instant case.

---

[3] In her concurring and dissenting opinion in *Seaman's,* Chief Justice Rose Bird appears to recognize the fact that the majority, without defining the parameters of the tort of breach of the implied covenant of good faith and fair dealing, nevertheless intimates that breach of the implied covenant in other special relationships similar to those between insurer and insured may give rise to a tort cause of action. She criticizes the majority for failing to rest its holding on the concept of breach of the implied covenant; she would disapprove of the definition of the tort in *Sawyer* (36 Cal.3d at p. 779, fn. 3), and, disregarding the special relationship limitation, proposes that when the breaching party acts in bad faith to shield itself entirely from liability for contract damages, the duty of good faith and fair dealing is violated, notwithstanding that the acts complained of may also constitute a breach of contract. (*Id.,* at pp. 778, 779.)

After *Seaman's,* California appellate courts have extended tort remedies for breach of the implied covenant in noninsurance cases on the ground that a special relationship was involved.[4] In *Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511 [209 Cal.Rptr. 551, 55 A.L.R.4th 1017], the court held that because the relationship of bank to depositor is at least quasi-fiduciary, and depositors reasonably expect a bank not to claim nonexistent legal defenses to avoid reimbursement after the bank negligently disbursed entrusted funds on a check containing unauthorized signatures, the bank breached its covenant of good faith and fair dealing by unreasonably refusing to credit a depositor's account for funds negligently paid out by the bank. (*Id.,* at p. 516.) In *Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109 [207 Cal.Rptr. 123], the court held that an employer's refusal to pay a laid-off employee agreed-upon termination benefits, consisting of monthly payments until the employee reached age 65, gave rise to a cause of action in tort because the contract between the parties shared similarities with an insurance contract and was even characterized as similar to a disability insurance contract. (*Id.,* at p. 1119.)

The court in *Wallis* also set out the criteria by which a noninsurance contract could be evaluated to determine whether the breach of the implied covenant of good faith and fair dealing gives rise to a tort action: "(1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability." (160 Cal.App.3d at p. 1118.)

Appellant contends that because all of the above criteria for a special relationship exist in the instant case, he therefore states a tort cause of action. Assuming for the purposes of argument that such a special relation-

---

[4]Several courts and commentators have argued or implied that because the purpose of tort damages is to prevent and punish socially unreasonable *conduct,* the focus of the tort should be the conduct of the breaching party and not the nature of the *relationship. (Rulon-Miller* v. *International Business Machines Corp.* (1984) 162 Cal.App.3d 241, 253 [208 Cal.Rptr. 524]; Cohen, *Reconstructing Breach of the Implied Covenant of Good Faith and Fair Dealing as a Tort* (1985) 73 Cal.L.Rev. 1291, 1299-1301.) One commentator recognized that there is nothing in the fiduciary relationship which compels limitation of the tort to that characteristic as "[t]orts involving fraud, negligence or intentional infliction of emotional distress may stem from breach of contract, but their commission does not depend upon proof of a fiduciary relationship." (Diamond, *The Tort of Bad Faith Breach of Contract: When, If at All, Should If Be Extended Beyond Insurance Transactions?* (1981) 64 Marq.L.Rev. 425, 431.)

ship is sufficient to give rise to a tort action for breach of the implied covenant of good faith and fair dealing, and there is no additional requirement that the conduct of the breaching party be "extraneous" to the contract, or that it offend accepted notions of business ethics (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, 770), or that it injure his right to receive the benefits of the agreement (*Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d 1155, 1170), we disagree with appellant that the *Wallis* criteria are satisfied by the instant facts.

With respect to the agreement to hire the limousine and driver, the parties are not in unequal bargaining positions. In fact, it seems that appellant was in the superior position and had quite a great deal of control over the aspects of the contract as he and others at the party were able to enter the limousine from time to time to consume alcoholic beverages. Further, the driver apparently accepted appellant's briefcase for safekeeping and had agreed to be at his service throughout the day and until the party ended, when the driver was to drive appellant and his wife home. Appellant claims that the contract involved a "special element of reliance," which could be said of any contract. Moreover, even if there were in fact an unusual element of reliance here, it does not amount to unequal bargaining positions.

As to appellant's motivation for entering into the contract, it is clear that he was not motivated by profit, but this is true of most personal service contracts. We find this factor to be nondispositive because its application would result in the overinclusion of tort remedies for breaches of many kinds of consumer contracts.

The argument that appellant was especially vulnerable because of the type of harm he would suffer from nonperformance is superficially appealing because of the spectacle of appellant and his wife stranded at the party, inebriated, clad only in bathing suits, and without their wallets or personal effects. Although they were indeed vulnerable, we construe the vulnerability intended in *Wallis* to be in the sense of having an inadequate opportunity to obtain substitute performance or to cover for a breach, and that such fact is known to the breaching party. Appellant does not allege such vulnerability here as he does not claim that the driver knew the contents of the briefcase when he drove off, nor that he intended to strand, or knew that appellant would be stranded, at the party with no alternative means of getting home. Even if such facts were alleged, or if appellant were given leave to amend to plead such facts, this element would not be dispositive. The critical factor is

that appellant has an adequate remedy for breach of contract and perhaps for breach of statutory duties.[5]

At least one court has declined to recognize a tort cause of action based on the breach of the implied covenant of good faith and fair dealing because the pleadings revealed the existence of an adequate statutory remedy under the Song-Beverly Consumer Warranty Act, although such remedy was not expressly mentioned in the complaint nor in argument. (*Gomez* v. *Volkswagen of America, Inc.* (1985) 169 Cal.App.3d 921, 924, 928-929 [215 Cal.Rptr. 507].) The court in *Gomez* reasoned as follows: "There is nothing before the court to indicate that the remedy afforded by Civil Code section 1794 is inadequate either in the amount of damages that a meritorious plaintiff may recover or as a deterrent to the proscribed conduct. Such inadequacy is, of course, a cornerstone of the judicial policy supporting a tort remedy for violation of the covenant of good faith and fair dealing found in every contract." (*Id.,* at pp. 928-929.)

The instant pleading reveals that the nature of the contractual obligations put respondent on notice that a breach could reasonably result in emotional distress. ██ ██ Although ordinarily, damages are not recoverable for mental suffering resulting from breach of contract (*O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 159 [119 Cal.Rptr. 245]), courts have allowed the recovery of emotional distress damages under a contract theory where emotional distress is a foreseeable and contemplated result of a breach.[6] (See *Ross* v. *Forest Lawn Memorial Park* (1984) 153 Cal.App.3d 988, 995 [203 Cal.Rptr. 468, 42 A.L.R.4th 1049]; *Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789, 801 [168 Cal.Rptr. 878].) Under the unique facts alleged here, where respondent was put on notice that appellant would be inebriated and unable to drive himself home, it is at least a triable issue whether the parties contemplated that emotional distress would be a foreseeable result of a breach of the contract.

It is also a reasonable inference from the pleadings that respondent is a carrier of persons for reward, and perhaps may also be a charter-party carrier of passengers. (See Pub. Util. Code, § 5360.) Therefore, appellant has a statutory cause of action against respondent based on Civil Code section 2100, and also may have remedies under Public Utilities Code

---

[5] Appellant also appears to be aware he could plead a tort claim for conversion, but for reasons not apparent from this record, has not asserted it in the second amended complaint.

[6] One commentator has persuasively argued that courts should focus more on methods, within the framework of contract law, to amplify compensatory damages for bad faith breach of contract rather than on the issue of whether a contract breach is or is not a tort. (Traynor, *Bad Faith Breach of a Commercial Contract: A Comment on the Seaman's Case* (1984) 8 Bus. L. News 1, 12-14.)

sections 5382 and 2106. ■ Because the complaint states a cause of action based on at least one valid legal theory of recovery, although not the legal theory conceived of by appellant, the demurrer should not have been sustained. Moreover, in light of this opinion, appellant may wish to amend his pleading to clarify his theory or theories of recovery, which clarification will also aid respondent in responding to the complaint.

## DISPOSITION

The judgment (order of dismissal) is reversed and the cause is remanded to the trial court with directions to vacate such order of dismissal, overrule the demurrer, and allow plaintiff a reasonable period of time within which to prepare and file an amended complaint consistent with the views expressed herein. Each party is to bear his own costs on appeal.

Johnson, J., and Reese, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.