[No. C021959. Third Dist. Oct. 31, 1996.]

BRUCE PICTON, Plaintiff and Appellant, v.
ANDERSON UNION HIGH SCHOOL DISTRICT et al., Defendants and
Respondents.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3 and 4.

**COUNSEL**

David L. Edwards for Plaintiff and Appellant.

Halkides & Morgan, G. Dennis Halkides, John P. Kelley, Murphy, Pearson, Bradley & Feeney, Karen M. Goodman and Barbara A. Cotter for Defendants and Respondents.

**OPINION**

**DAVIS, Acting P. J.**—In this action for breach of contract, defamation and other torts, plaintiff Bruce Picton (Picton), a high school teacher, appeals from a judgment in favor of his former employer, defendant Anderson Union High School District (Anderson), after Anderson's demurrer was sustained without leave to amend. Picton had been accused of unprofessional conduct and other matters by four female students. Pursuant to agreements with Anderson and with the student who had leveled the most serious accusation, Picton resigned from his teaching position.

In the published portion of this opinion, we conclude that Picton cannot allege causes of action for breach of contract and defamation against Anderson. Picton claims that Anderson breached a nondisclosure provision in the

Anderson-Picton agreement by informing the Commission on Teacher Credentialing and the committee of credentials of the facts surrounding Picton's resignation. We conclude that this application of the nondisclosure provision is illegal and cannot be enforced. We also conclude that the communications to the committee of credentials were absolutely privileged under Civil Code section 47, subdivision (b), as they were made in an "official proceeding authorized by law."

In the unpublished portion of this opinion, we conclude that Picton cannot maintain his causes of action for fraudulent inducement of contract, wrongful termination, civil conspiracy, tortious interference with prospective economic advantage, and negligent and intentional infliction of emotional distress. The fraudulent inducement cause of action falls with the breach of contract action and with an acknowledgment in the Anderson-Picton agreement. The remaining causes of action fall prey to a legally valid provision of the Anderson-Picton agreement, which releases all claims between them. The civil conspiracy action is also invalid on statutory grounds.

Consequently, we affirm the judgment.

### BACKGROUND

Because we are reviewing a demurrer, we are limited to the facts alleged in the complaint and appearing in the exhibits attached to the complaint. (See *Dodd* v. *Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626-1627 [272 Cal.Rptr. 623].)

From July of 1986 to June of 1994, Picton was a history and social studies teacher employed by Anderson at West Valley High School.

In July of 1993, Anderson served Picton with an amended statement of charges. Anderson charged that Picton had engaged in immoral, unprofessional and dishonest conduct rendering him unfit to serve as a certificated teacher. These charges stemmed from accusations by four female students. The most serious accusation came from Amy S., who claimed that Picton had raped her.

Picton denied all of the charges. The parties engaged in extensive discovery; Anderson was represented by the defendant law firm Lozano, Smith, Smith, Woliver & Behrens (Lozano-Smith).

In October 1993, Anderson and Picton entered into a settlement agreement (the Anderson-Picton agreement). Picton agreed to resign, effective at the

end of the 1993-1994 school year, and agreed to release Anderson and its board of trustees (defendants Michael Farrar, Edward Petersen, James Rickert, Lynn Peebles and Marj Sippel) from all present and future claims and causes of action. Anderson agreed to pay Picton his full salary for the 1993-1994 school year as well as an additional $20,200, agreed to give Picton one year of service credit for the 1993-1994 school year, and agreed to provide full-time health and welfare benefits extendible to November 30, 1994. Anderson also agreed to release Picton from all present and future claims and causes of action.

The Anderson-Picton agreement was not to become effective unless Amy S. and Picton executed a certain agreement between themselves. Amy and Picton did so, with Picton agreeing to resign and Amy agreeing to withdraw, retract and revoke all of her allegations against Picton.

On the condition that Amy and Picton would execute their agreement, Anderson, in its agreement with Picton, agreed to delete from the July 1993 amended statement of charges the accusations Amy had made against Picton (this created what became known as the revised amended statement of charges). Anderson also agreed to seal Picton's personnel file except pursuant to court order or Picton's consent.

In paragraph 11 of the Anderson-Picton agreement, Anderson agreed to the following provision governing third party disclosure: "[W]ith respect to any and all third party inquiries about Picton, . . . such inquiries shall be directed to the Superintendent of the District, or his successor, who shall respond verbally and only disclose the dates of Picton's employment, his highest yearly salary, that Picton is or was, as the case may be, on a paid leave for the 1993/94 school year, and the information set forth in Exhibit 'B' attached hereto . . . [Exhibit B states that Picton 'was accused of unprofessional conduct and other causes by four female students, and [Anderson] initiated dismissal proceedings. The student whose allegations were the most serious formally withdrew her charges against him. [Picton] has determined that it is in his best interest to resign from his employment in [Anderson] to pursue other employment and endeavors']."

The Anderson-Picton agreement stated that if any of its provisions were judicially determined to be invalid or unenforceable, the remaining provisions would continue in force.

Picton claims that Anderson, through defendants James Spence, Richard Pangburn, and Kevin Dolan, solicited and pressed for the accusations against Picton after Picton complained that curriculum credits and class sizes were

not in accord with certain standards. Spence is Anderson's superintendent; Pangburn is West Valley High School's principal; and Dolan is a teacher at West Valley.

After Picton had agreed to resign, Anderson sent documents to the Commission on Teacher Credentialing detailing and supporting the rape accusation that Amy S. had made against Picton, as well as the other accusations that had been made against Picton.

Pangburn (West Valley's principal) and Nancy Klein (an attorney with defendant Lozano-Smith) also testified before the committee of credentials regarding the accusations that Amy S. had made against Picton. Pangburn and Klein informed the committee that while Amy S. had withdrawn, retracted and revoked all of her allegations against Picton, Amy had confirmed to them that the allegations were true.

Pangburn and Klein were the only witnesses who appeared and testified against Picton at the hearing before the committee of credentials. As a result of the documents and testimony that Anderson submitted to the Commission on Teacher Credentialing and its committee of credentials, the commission suspended Picton's teaching credential and Picton has been unable to obtain a credentialed teaching position.

The Anderson defendants collectively (defendants Anderson, Spence, Pangburn, Dolan, Farrar, Petersen, Rickert, Peebles and Sippel) and defendant Lozano-Smith on its own filed demurrers to Picton's first amended complaint. The trial court sustained these two demurrers without leave to amend. The trial court ruled that the causes of action for breach of contract and for fraudulent inducement of contract could not legally be maintained in the face of California Code of Regulations, title 5, section 80311; that the defamation cause of action concerned only privileged communications; and that the remaining causes of action were barred under the severable, legal portion of the Anderson-Picton agreement that released all claims between them. As we explain, we agree with these rulings.

## DISCUSSION

■ Before turning to the complaint at issue, we briefly set forth the standard of review. A demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations. (*Amarel* v. *Connell* (1988) 202 Cal.App.3d 137, 140 [248 Cal.Rptr. 276].) We therefore treat as true all of the complaint's material factual allegations, but not contentions, deductions or conclusions

of fact or law. (*Id.* at p. 141; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We can also consider the facts appearing in exhibits attached to the complaint. (See *Dodd* v. *Citizens Bank of Costa Mesa, supra,* 222 Cal.App.3d at p. 1627.) We are required to construe the complaint liberally to determine whether a cause of action has been stated, given the assumed truth of the facts pleaded. (*Rogoff* v. *Grabowski* (1988) 200 Cal.App.3d 624, 628 [246 Cal.Rptr. 185].)

### 1. *Breach of Contract*

Picton sets forth the crux of his breach of contract cause of action, which he alleges against Anderson only, in the following paragraph of his first amended complaint:

"[T]he [testimony] made by [Anderson through Richard Pangburn and Nancy Klein] . . . before the Committee [of] Credentials and the transmission by [Anderson] of the declarations, statements and other documents assembled in connection with the underlying charges were and are a breach of the conditions and promises made by [Anderson] in the [Anderson-Picton] Settlement Agreement . . . and specifically to paragraph 11 thereof in which [Anderson] agreed and promised that 'with respect to any and all third party inquiries about Picton, that such inquiries shall be directed to the Superintendent of [Anderson] or [his] successor, who shall respond verbally and only disclose the dates of Picton's employment, his highest yearly salary, that Picton is or was, as the case may be, on a paid leave for the 1993/94 school year, and the information set forth in Exhibit 'B' attached hereto . . . [Exhibit B states that Picton was accused of unprofessional conduct by four female students, but the most serious accusation was withdrawn].' "

Picton contends that Anderson had no legal duty to appear before the committee of credentials, to give false testimony against him or to actively pursue disciplinary action regarding Picton's teaching credential. Essentially Picton contends that Anderson could have satisfied its duty to the Commission on Teacher Credentialing and the committee of credentials, without breaching the Anderson-Picton agreement, by simply sending to the commission a copy of the revised amended statement of charges or by sending the set of facts contemplated by the third party nondisclosure provision of the Anderson-Picton agreement. (The revised amended statement of charges had deleted from the July 1993 amended statement of charges the accusations that Amy S. had made against Picton. Anderson did send this revised statement to the commission).

We shall conclude that Anderson was under a legal duty to notify the Commission on Teacher Credentialing of Picton's resignation and to provide

the committee of credentials with all of the facts which constituted the cause for Anderson's disciplinary action against Picton. To the extent the Anderson-Picton agreement can be construed as foreclosing the transmission of such facts, this portion of the agreement is illegal as a matter of public policy and cannot be enforced. Consequently, the trial court properly sustained without leave to amend Anderson's demurrer to Picton's cause of action for breach of contract.

Because the Commission on Teacher Credentialing and its committee of credentials play a prominent role in our reasoning on this issue, we set forth a brief background on these two entities.

The Commission on Teacher Credentialing (the Commission) is a state government commission that establishes the standards, assessments, and examinations for entry and advancement in the education profession, including the standards for the issuance and renewal of teaching credentials. (Ed. Code, §§ 44210, 44225, subds. (a), (d); all further references to undesignated sections will be to the Education Code unless otherwise specified.)

The Commission appoints the committee of credentials (the Committee). (§ 44240.) As pertinent here, any alleged act or omission by a credential holder for which the credential may be suspended or revoked must be presented to the Committee. (§ 44242.5, subd. (a).) The Committee must investigate each allegation. (§ 44242.5, subd. (c).) Pursuant to that investigation, the Committee must conduct a meeting or hearing, under prescribed standards, to consider the allegations and must determine whether there is probable cause for suspension or revocation of the credential. (*Ibid.*; see § 44244.) Upon completion of its investigation, the Committee must report its actions and decisions to the Commission, including its findings as to probable cause, and if probable cause exists, its recommendation as to suspension or revocation of the credential. (§ 44242.5, subd. (e)(1).)

The Commission is authorized to adopt regulations to carry out its functions. (§§ 44225, subd. (q), 44339.) One such regulation is found in title 5, section 80311 of the California Code of Regulations (hereafter, Regulation 80311). Regulation 80311 provides in pertinent part:

"(a) Whenever any person holding a position for which certification qualifications are required by law, including a temporary or substitute employee, is dismissed, resigns, is suspended for at least 90 days, or is otherwise terminated by a decision to not re-employ as a result of allegations of his or her commission of acts or omissions which appear to constitute probable cause for the revocation or suspension of any credential issued by

or held under the jurisdiction of the Commission on Teacher Credentialing, the employer of such certificated person shall within 30 days notify the Commission of such suspension, dismissal, resignation, or other termination by a decision to not re-employ and shall provide to the Committee of Credentials facts which constitute the cause or causes for the disciplinary action against the certificated employee by the reporting employer. Such report shall be made to the Committee of Credentials irrespective of any agreement or stipulation providing for withdrawal of allegations previously served upon the certified employee in consideration of his or her resignation as a result of the filing of such allegations or other failure to contest the truth of the allegations."

Under Regulation 80311, Anderson *had* to notify the Commission of Picton's resignation, since that resignation resulted from allegations of acts which appeared to constitute probable cause for the revocation or suspension of Picton's credential. (See § 44339; Cal. Code Regs., tit. 5, §§ 80308, 80310.) And under Regulation 80311, Anderson *had* to provide the Committee with the "facts which constitute the cause or causes for [Anderson's] disciplinary action against" Picton.

Picton contends, in essence, that Anderson could have satisfied its duties under Regulation 80311 by providing the Commission and the Committee with the "sanitized" facts (our characterization, not Picton's) specified by the third party nondisclosure provision of the Anderson-Picton agreement (paragraph 11 of that agreement). According to Picton, Anderson went way beyond what was legally required under Regulation 80311 by submitting documents and testimony to the Commission and the Committee, most notably involving Amy S.'s rape accusation. We disagree.

The facts which constituted the reason for Anderson's disciplinary action against Picton were spearheaded by the evidence that Picton had raped Amy S. This was the central fact "which constitute[d] the cause . . . for [Anderson's] disciplinary action against" Picton. (See Reg. 80311.) As a matter of public policy, the third party nondisclosure provision of the Anderson-Picton agreement cannot be enforced in this context. Anderson had to notify the Commission of Picton's resignation. (Reg. 80311.) Anderson had to provide the Committee with all of the facts on which Picton's resignation was based, and let the Committee investigate the matter. (Reg. 80311; see § 44242.5, subds. (a), (c).) Providing anything less would have made a mockery of one of the principal reasons for the existence of the Commission and the Committee: the job-related oversight of those holding teaching credentials. (See §§ 44225, 44240, 44242, 44242.5.) There would be no genuine oversight by the Commission and the Committee if the credential holder could contractually dictate what the Commission and the Committee could see.

Regulation 80311 recognizes the need for such a conclusion. It states that the employer's report to the Committee "shall be made . . . irrespective of any agreement or stipulation providing for withdrawal of allegations previously served upon the certified employee in consideration of his or her resignation . . . ." (See *Allen* v. *Jordanos' Inc.* (1975) 52 Cal.App.3d 160, 164-166 [125 Cal.Rptr. 31] [employer and its discharged employee contractually agreed to withhold information from a state agency which the agency could have used to deny the employee's right to unemployment benefits; employer later provided the state agency with the information and was sued for breach of contract by the employee; employer's demurrer to the employee's breach of contract action properly sustained without leave to amend because the nondisclosure provision was held to be illegal].)

Picton also asserts that since the revised amended statement of charges deleted Amy S.'s rape accusation, that accusation could not have constituted the reason for Anderson's disciplinary action against Picton. Therefore, Picton argues, Anderson was under no obligation to disclose the facts of Amy S.'s rape accusation to the Committee. As we have noted, this rape accusation (and the evidence supporting it) was the main reason that Anderson moved against Picton. This accusation was deleted from the amended statement of charges only because Picton agreed to resign. For the statutory and public policy reasons noted earlier (see § 44242.5, subds. (a), (c)), the accusation's significance to the Committee and its investigation could not be similarly deleted. (See Reg. 80311.) In short, Anderson was obligated under Regulation 80311 to provide the Committee with all of the facts constituting the reason for Picton's resignation. Amy S.'s rape accusation was the most prominent of those facts.

Finally, Picton notes that Anderson was under no duty to give the Committee false testimony against Picton. That's certainly true as far as it goes, but it does not go very far here. Under Regulation 80311, Anderson had to provide the Committee with the facts constituting the cause for Anderson's disciplinary action against Picton. Those facts were comprised of the accusations of improper conduct on Picton's part, including Amy S.'s accusations. Anderson, as it was obligated to do, provided the Committee with these accusations and the facts supporting them. The Committee took it from there.

We conclude the trial court properly sustained without leave to amend Anderson's demurrer to Picton's cause of action for breach of contract.

### 2. *Defamation*

In his first amended complaint, Picton alleges that Anderson defamed him through the testimony of Nancy Klein and Richard Pangburn at

the hearing before the Committee. The challenged testimony covered the accusations by the four female students, with Amy S.'s accusations as the central focus. We conclude that Anderson's communications to the Committee were absolutely privileged because the proceeding before the Committee was an "official proceeding authorized by law." (Civ. Code, § 47, subd. (b); hereafter, section 47(b).)[2]

█ "The phrase 'in any other official proceeding authorized by law' embraced in section 47, subdivision 2 [now section 47(b)] has been interpreted to encompass those proceedings which resemble judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings. . . . In accord with the California cases, the general rule is now well established that *the absolute privilege is applicable not only to judicial but also to quasi-judicial proceedings* and defamatory statements made in both judicial and quasi-judicial proceedings having some relation thereto are absolutely privileged." (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656], citations omitted, italics in original (*Ascherman*).) This absolute privilege is needed " 'to assure [the] utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.' " (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 213 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*), quoting *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 55 [138 Cal.Rptr. 540].)

The primary factors which determine whether an administrative body possesses a quasi-judicial power for section 47(b) "official proceeding" purposes are: (1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts, and (3) whether its power affects the personal or property rights of private persons. (*Ascherman, supra,* 23 Cal.App.3d at p. 866.) The Committee satisfies all three criteria.

█ First, the Committee is a governmental administrative body vested with discretion based upon investigation and consideration of evidentiary facts. (§§ 44210, 44242, 44242.5, 44244; Cal. Code Regs., tit. 5, § 80317.2; see *Hackethal* v. *Weissbein* (1979) 24 Cal.3d 55, 59 [154 Cal.Rptr. 423, 592 P.2d 1175, 9 A.L.R.4th 791].) In fact, the Committee's primary purpose is to investigate and consider evidentiary facts. (§ 44242.5.) "Each allegation of an act or omission by an applicant for, or holder of, a credential for which he

---

[2]Section 47(b) states in part that a "privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, [or] (3) in any other official proceeding authorized by law . . . ."

or she may be privately admonished, publicly reproved, or for which his or her application or credential may be denied, suspended, or revoked shall be presented to the Committee," and the Committee "shall investigate each allegation." (§ 44242.5, subds. (a), (c).) In carrying out its investigation, the Committee holds a meeting or hearing in accord with certain notice and evidentiary standards (including sworn testimony). (§§ 44242.5, subd. (c)(3), 44244, subds. (a), (b).)

Second, the Committee is entitled to hold hearings and decide the issue of probable cause by the application of rules of law to the ascertained facts. Using its investigatory meeting or hearing, the Committee determines whether probable causes exists for private admonition or public reproof or for denial, suspension, or revocation of the credential. (§ 44242.5, subd. (c)(3), (c)(4); see § 44244.) "Probable cause" is defined according to a legal standard. (Cal. Code Regs., tit. 5, § 80310.) If the Committee determines that probable cause does not exist, the Committee ends its investigation. (§ 44242.5, subd. (c)(4)(A).) If the Committee determines that probable cause does exist, it initiates a further hearing and provides the Commission with a recommendation regarding discipline. (§ 44242.5, subd. (c)(4)(B); see §§ 44242.5, subd. (e)(1), 44244.1, 44245, 44246.)

And third, the Committee's power affects the personal and property rights of private persons. "The [Committee's] findings shall describe . . . the [C]ommittee's determination as to what acts of misconduct by the credential holder or applicant occurred, and the relationship between the applicant or credential holder's misconduct and that person's ability or fitness to perform the duties for which he or she is certified or seeking certification." (§ 44242.5, subd. (e)(1).) The Committee, in short, plays a critical role in deciding the fate of a person's professional livelihood by applying a legal standard of probable cause to evidentiary facts it ascertains through investigation. The section 47(b) "official proceeding" absolute privilege therefore applies. (See *Patricia H.* v. *Berkeley Unified School Dist.* (N.D.Cal. 1993) 830 F.Supp. 1288, 1300-1302 [concluding that the Committee acted in a judicial capacity for res judicata purposes on the factual issue of whether a teacher molested a student, because the Committee issued a decision after applying the legal standard of probable cause to the facts it uncovered through investigation].)

The section 47(b) absolute privilege encompasses "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation [or proceeding]; and (4) that have some connection or logical relation to the action." (*Silberg, supra,* 50 Cal.3d at p. 212.) Furthermore,

letters or communications designed to *prompt* action by an official administrative agency are as much a part of the section 47(b) "official proceeding" absolute privilege as a communication made after the proceeding has begun. (*Dorn* v. *Mendelzon* (1987) 196 Cal.App.3d 933, 941 [242 Cal.Rptr. 259]; *King* v. *Borges* (1972) 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414].)

Picton relies on *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 826 [106 Cal.Rptr. 718], which sets forth an exception to this absolute privilege for those communications not made to promote the "interest of justice." This exception was expressly disapproved in *Silberg* because it could play havoc with the privilege's purpose of encouraging open communication. (*Silberg, supra,* 50 Cal.3d at pp. 216-219.)

█  We conclude the trial court properly sustained without leave to amend Anderson's demurrer to Picton's cause of action for defamation.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Raye, J., and Morrison, J., concurred.

---

*See footnote 1, *ante,* page 726.