Opinion
HASTINGS, J.
This case presents the question whether the Employee Retirement Income Security Act of 1974 (ERISA), 88 Statute 829, as amended, 29 United States Code section 1001 et seq., preempts state common law claims by an employer and benefit plan against a contract administrator for alleged breach of contract and tortious conduct. We conclude there is no preemption under these circumstances, noting a split among the federal circuits. We also determine that the employer has standing to bring this action. We reverse the judgment of the superior court and remand this matter for further proceedings.
Background
Plaintiffs and appellants Simon Levi Company, Ltd. (Levi) and Simon Levi Company, Ltd. Profit Sharing Plan (Plan, collectively appellants) appeal from the judgment of dismissal following a court order sustaining without leave to amend the demurrer of defendants and respondents Dun & Bradstreet Pension Services, Inc., and National Associates, Inc. (collectively *499 respondents) which asserted that ERISA preempted Levi’s complaint for relief under California law for alleged breach of contract, professional negligence, and related causes of action. For purposes of review, we accept the allegations pleaded as true. (Rogoff v. Grabowski (1988) 200 Cal.App.3d 624, 628 [246 Cal.Rptr. 185].)
Appellants alleged the following facts as background to its asserted breach of contract and tort causes of action.
The Plan, a legal entity with the capacity to sue, is an employee benefit plan that is governed by ERISA. Employer Levi is the sponsor and administrator of the Plan. Dun & Bradstreet-National Associates, collectively referred to as National Associates in the complaint, holds itself out as an expert in pension and profit sharing plan administration and is “contract administrator” to the Plan. National Associates performs such duties as allocating contributions, forfeitures, and earnings of the Plan among participants; posting distributions made to participant’s accounts; maintaining participant records; processing benefit claims; and, of primary importance to the instant case, calculating the amount of benefits payable to Plan participants. Levi had no expertise in administering employee benefit plans and relied on the expertise of National Associates in administering the Plan.
On or about July 31, 1991, James Hansen, a Plan participant, terminated employment with Levi. Linda Podhorski, vice-president of National Associates, acting in the course and scope of her employment, directed Levi to direct the Plan’s trustee to distribute $562,844.28 of the Plan’s assets to Mr. Hansen.
On September 16, 1992, Ms. Podhorski advised Levi that Mr. Hansen had been underpaid by $40,098.81. This erroneous advice was based upon Ms. Podhorski’s negligent misreading of an asset statement. In reasonable and good faith reliance on Ms. Podhorski’s advice, the Plan paid an additional $45,735.89 to Mr. Hansen.
In December 1993, Ms. Podhorski reversed herself and notified Levi that the Plan’s assets were short approximately $45,000 due to the 1992 overpayment to Mr. Hansen. Levi attempted in good faith to mitigate the loss by requesting reimbursement from Mr. Hansen, but Mr. Hansen refused. The loss to the Plan is $45,735.89 plus interest.
The complaint recites the separate causes of action for professional malpractice/negligence, negligence, intentional misrepresentation, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and that “National Associates’ failure to properly calculate the *500 amount of benefits payable to participants constitutes a breach of the contracts between Dun & Bradstreet and Plaintiffs.” The complaint prays for compensatory, general, and special damages, prejudgment interest, reasonable attorneys fees and costs, and, with respect to the alleged intentional misrepresentation, punitive damages.
Respondents demurred on the grounds that ERISA preempted the action and that Levi had not suffered damages and thus could not itself state a cause of action.
The trial court sustained the demurrer without leave to amend “for the reasons set forth in the demurrer.” Judgment was entered, and this appeal followed.
Discussion
“ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. [Citations.]” (Shaw v. Delta Air Lines, Inc. (1983) 463 U.S. 85, 90 [103 S.Ct. 2890, 2896, 77 L.Ed.2d 490].) “As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and ‘to completely secure the rights and expectations brought into being by this landmark reform legislation.’ [Citation.]” (Ingersoll-Rand Co. v. McClendon (1990) 498 U.S. 133, 137 [111 S.Ct. 478, 482, 112 L.Ed.2d 474].) The United States Supreme Court has held that ERISA “[s]ection 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries. [Citations.]” (Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. at p. 142 [111 S.Ct. atp. 484].) The preemption provision is broadly worded. As set forth in 29 United States Code section 1144(a), ERISA, section 514(a) provides, absent certain exceptions not applicable here, that “the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to [such] employee benefit plan. . . .” (29 U.S.C. § 1144(a), italics added.)[1] Preemption is “not precluded simply because a state law is consistent with ERISA’s substantive requirements.” (Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. at p. 139 [111 S.Ct. at p. 483], citing Metropolitan Life Ins. Co. v. Massachusetts (1985) 471 U.S. 724, 739 [105 S.Ct. 2380, 2388-2389, 85 L.Ed.2d 728].) In addition, the absence of a remedy *501 under the federal provision, without more, is insufficient to bring the state law into play (Pilot Life Ins. Co. v. Dedeaux (1987) 481 U.S. 41, 55 [107 S.Ct. 1549, 1557, 95 L.Ed.2d 39]), although the presence of an ERISA remedy is relevant in assessing Congress’s intent to preempt state law claims (Metropolitan Life Ins. Co. v. Taylor (1987) 481 U.S. 58, 63-66 [107 S.Ct. 1542, 1546-1548, 95 L.Ed.2d 55]).
“A law ‘relates to’ an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.” (Shaw v. Delta Air Lines, Inc., supra, 463 U.S. at pp. 96-97 [103 S.Ct. at p. 2900].) “Under this ‘broad common-sense meaning,’ a state law may ‘relate to’ a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. [Citations.]” (Ingersoll-Rand. Co. v. McClendon, supra, 498 U.S. at p. 139 [111 S.Ct. at p. 483], citing Pilot Life Ins. Co. v. Dedeaux, supra, 481 U.S. at p. 47 [107 S.Ct. at pp. 1552-1553].)
Not surprisingly, courts have applied the ERISA preemption to a wide variety of causes. Obviously, state laws which are “ ‘specifically designed to affect employee benefit plans’ ” are preempted, and this is so even when such laws expressly exclude ERISA plan benefits. (Mackey v. Lanier Collection Agency & Serv. (1988) 486 U.S. 825, 829 [108 S.Ct. 2182, 2185, 100 L.Ed.2d 836].) Also included are virtually all actions brought by participants and beneficiaries relating to plan benefits. (See, e.g., Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. at pp. 139-140 [111 S.Ct. at pp. 482-484] [ERISA preempts employee’s state wrongful discharge action that alleged employer effected discharge to avoid contributions to pension fund];[2] Pilot Life Ins. Co. v. Dedeaux, supra, 481 U.S. at pp. 56-57 [107 S.Ct. at pp. 1557-1558] [ERISA preempts employee’s state common law causes for improper processing of benefit claim against insurer that issued group insurance policy for benefit of employer or employees]; Metropolitan Life Insurance Co. v. Taylor, supra, 481 U.S. 58 [action by beneficiary to recover plan benefits]; Spain v. Aetna Life Ins. Co. (9th Cir. 1993) 11 F.3d 129, 131-132 [ERISA preempts wrongful death action arising from plan’s delay in approval of participant’s medical treatment].)
The Supreme Court has recognized limitations to ERISA’s preemption clause. It has reasoned that ERISA does not preempt “generally applicable [state] statute[s] that make[] no reference to, or indeed function[] irrespective of, the existence of an ERISA plan.” (Ingersoll-Rand Co. v. *502 McClendon, supra, 498 U.S. at p. 139 [111 S.Ct. at p. 483]; see, e.g., Mackey v. Lanier Collection Agency & Serv., supra, 486 U.S. at p. 841 [108 S.Ct. at p. 2191] [state’s general garnishment statute not preempted, even though it could result in the collection of judgments against plan participants and such collection might burden the administration of the plan]; Fort Halifax Packing Co. v. Coyne (1987) 482 U.S. 1, 12 [107 S.Ct. 2211, 2218, 96 L.Ed.2d 1] [state law requiring payment of severance benefits, “a one-time, lump-sum payment triggered by a single event,” not preempted because, although normally within the scope of ERISA, the law did not require the establishment or maintenance of an ERISA plan to effect such payment]; Franchise Tax Bd. v. Laborers Vacation Trust (1983) 463 U.S. 1, 25-26 [103 S.Ct. 2841, 2855, 77 L.Ed.2d 420] [action by state tax authorities to levy against ERISA trust money of union members for unpaid personal income tax held “not of central concern to the federal statute[s]” and thus not preempted]; Aetna Life Ins. Co. v. Borges (2d Cir. 1989) 869 F.2d 142, cert. den. 493 U.S. 811 [110 S.Ct. 57, 107 L.Ed.2d 25] [ERISA does not preempt state escheat law].)
The Supreme Court has also held it must be presumed “that Congress did not intend to pre-empt areas of traditional state regulation.” (Metropolitan Life Ins. Co. v. Massachusetts, supra, 471 U.S. at p. 740 [105 S.Ct. at p. 2389].) For example, ERISA plans may be sued “for run-of-the mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan. . . .” (Mackey v. Lanier Collection Agency & Serv., supra, 486 U.S. at p. 833 & fn. 8 [108 S.Ct. at p. 2187], and cases cited therein.) In addition, “[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law ‘relates to’ the plan. [Citation.]” {Shaw v. Delta Air Lines, Inc., supra, 463 U.S. at p. 100, fn. 21 [103 S.Ct. at p. 2901].)
As one commentator has stated: “[The United States Supreme Court] employs a functional definition of ‘relates to,’ analyzing whether the state law as applied in a particular case makes ERISA, or an area of concern to ERISA, a substantive element of the claim.” (Note, Employer Recapture of ERISA Contributions Made by Mistake: A Federal Common Law Remedy to Prevent Unjust Enrichment (1991) 89 Mich. L.Rev. 2000, 2017.)
Principal ERISA entities are employers, plans, plan fiduciaries, and plan beneficiaries. (Memorial Hosp. System v. Northbrook Life Ins. Co. (5th Cir. 1990) 904 F.2d 236, 249; Mertens v. Kaiser Steel Retirement Plan (N.D.Cal. 1992) 829 F.Supp. 1158, 1162, affd. by Mertens v. Hewitt Associates (1993) 508 U.S. 248, 263 [113 S.Ct. 2063, 2072, 124 L.Ed.2d 161].) The Ninth Circuit has held that factors to be considered when determining whether a state law “relates to” an ERISA plan because it has a “connection with” such plan include “whether the state law regulates certain ERISA *503 relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between an employer and employee.” (WSB Elec., Inc. v. Curry (9th Cir. 1996) 88 F.3d 788, 794.)[3] “ERISA doesn’t purport to regulate those relationships where a plan operates just like any other commercial entity—for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space. State law is allowed to govern these relationships, because it’s much less likely to disrupt the ERISA scheme than in other situations.” (General American Life Ins. Co. v. Castonguay (9th Cir. 1993) 984 F.2d 1518, 1522; see also Cook Wholesale v. Connecticut General Life Ins. (W.D.N.Y. 1995) 898 F.Supp. 151, 155; cf. Hashimoto v. Bank of Hawaii (9th Cir. 1993) 999 F.2d 408, 411 [trial of wrongful discharge under state “whistle blower” law would require an interpretation of the ERISA plans under which plaintiff had objected that defendant bank had failed to fulfill its fiduciary obligations].)
A case close to the facts of the instant matter is Bourns, Inc. v. KPMG Peat Marwick (C.D.Cal. 1994) 876 F.Supp. 1116. Bourns, Inc., filed an action in state court asserting state law claims against the defendant for accountant malpractice and breach of contract, alleging that Peat Marwick had improperly audited certain loans approved by the plan’s advisory committee. Peat Marwick removed the matter to federal court and moved to dismiss on the basis of ERISA preemption. The district court characterized the issue as “whether ERISA preempts a state law claim for accountant malpractice and breach of contract based on auditing work performed for an ERISA plan.” (Id. at p. 1118.) The Bourns court reviewed rules set forth in Shaw v. Delta Air Lines, Inc., supra, 463 U.S. at pages 95-96 [103 S.Ct. at pages 2898-2899], Mackey v. Lanier Collection Agency & Serv., supra, 486 U.S. at pages 832-834 [108 S.Ct. at pages 2186-2188], Pilot Life Ins. Co. v. Dedeaux, supra, 481 U.S. at pages 53-54 [107 S.Ct. at pages 1556-1557], Gibson v. Prudential Ins. Co. of America (9th Cir. 1990) 915 F.2d 414, 417-418, General American Life Ins. Co. v. Castonguay, supra, 984 F.2d at page 1521, and others. It also noted that ERISA sets forth specific duties for auditors (29 U.S.C. § 1023(a)(3)), that the Department of Labor has promulgated regulations in support of those ERISA requirements, and that auditors such as Peat Marwick are “parties in interest,” that is, any “person providing *504 services to such plan” (29 U.S.C. § 1002(14)(B)), rather than fiduciaries under ERISA, and therefore may not engage in certain transactions and may not receive more than “reasonable compensation” (29 U.S.C. §§ 1106, 1108(b)(2)). (Bourns, Inc. v. KPMG Peat Marwick, supra, 876 F.Supp. at p. 1120.)
Despite ERISA’s comprehensive regulation of auditors as such, Bourns held that ERISA does not regulate the relationship between a plan, or plan sponsor, and its accountant to such an extent that ERISA preempts all state law claims arising from that relationship. (Bourns, Inc. v. KPMG Peat Marwick, supra, 876 F.Supp. at p. 1121.) The court also rejected the argument that because ERISA provides a remedy for auditor misconduct, all separate state law remedies are preempted, noting that while a plan’s landlord “is a party in interest and therefore subject to an equitable claim for overcompensation [under ERISA],” the relationship between plan and landlord was still governed by state landlord-tenant law. (Ibid.) Bourns cited additional cases holding that ERISA did not preempt state law malpractice claims against plan auditors and other professionals performing similar services. (See, e.g., Airports Co. v. Custom Ben. Services of Austin (10th Cir. 1994) 28 F.3d 1062; Painters of Phil. D. Coun. v. Price Waterhouse (3d Cir. 1989) 879 F.2d 1146, 1153, fn. 7.) The court concluded that in the absence of complete ERISA preemption, removal to federal court had been inappropriate, citing Metropolitan Life Ins. Co. v. Taylor, supra, 481 U.S. at page 64 [107 S.Ct. at pages 1546-1547]. (876 F.Supp. at p. 1122 [107 S.Ct. at pp. 1546-1547].)
Other circuits and district courts have reached analogous results. In Custer v. Sweeney (4th Cir. 1996) 89 F.3d 1156, plaintiff, a trustee of and participant in an ERISA-regulated plan, brought an action against the plan’s attorneys, alleging breach of ERISA fiduciary duties and professional malpractice in representing the plan. The appellate court affirmed the district court’s dismissal of the complaint for failure to plead sufficient facts to establish that the defendants were ERISA fiduciaries and then addressed the state law claim. Citing Bourns, Inc. v. KPMG Peat Marwick, supra, 876 F.Supp. 1116, and eight additional cases, the Custer court stated:
“We . . . conclude that Custer’s legal malpractice claim against [defendants] does not fall under ERISA’s preemptive umbrella. We do so because we do not believe that Congress intended ERISA to preempt state law malpractice claims involving professional services to ERISA plans. ERISA does not evince a clear legislative purpose to preempt such traditional state-based laws of general applicability, and permitting Custer’s claim would not undermine the congressional policies that underlie ERISA.
*505 “A presumption that ERISA does not preempt legal malpractice claims arises because the law governing legal malpractice represents a traditional exercise of state authority. See Mackey, 486 U.S. at 833, 108 S.Ct. at 2187; Airports, 28 F.3d at 1066-67; Painters, 879 F.2d at 1153 n. 7; Firestone [Tire & Rubber Co. v. Neusser (6th Cir. 1987)] 810 F.2d [550] at 555. Federalism concerns strongly counsel against imputing to Congress an intent to displace ‘a whole panoply of state law in this area’ absent some clearly expressed direction. [Citations.] We are especially wary of finding ERISA preemption in this case because the logic of such a holding would sweep into federal court a wide range of professional malpractice claims, like Custer’s, that allege the provision of negligent advice about the requirements of federal law.
“Moreover, we do not believe that permitting state law malpractice claims against attorneys representing ERISA plans would in any way compromise the policies that ERISA was designed to promote. ... A legal malpractice claim ‘does not affect the structure, the administration, or the type of benefits provided by an ERISA plan.’ Rebaldo v. Cuomo, 749 F.2d 133, 139 (2d Cir. 1984) cert, denied, All U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); see also Airports, 28 F.3d at 1066. Nor does such a claim implicate ‘the relations among the traditional [ERISA] plan entities[,]. . . [the] principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.’ Id. Thus, a legal malpractice claim such as that at issue here does not fall within any of the categories of laws that courts have generally held to be preempted by ERISA: Taws . . . that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.’ Aetna Life Ins. Co., 869 F.2d at 146; see also Airports, 28 F.3d at 1064-65.” (Custer v. Sweeny, supra, 89 F.3d at p. 1167; see also Airports Co. v. Custom Ben. Services of Austin, supra, 28 F.3d at pp. 1065-1067; Richards v. Union Labor Life Ins. Co. (D.Minn. 1992) 804 F.Supp. 1101, 1105-1106 [no preemption of actions by plan and trustees against retained insurance company and “in-house” actuary for alleged negligent provision of incorrect actuarial information to administrators of plan].)
We now apply the rules reviewed to the instant case. This is an action by the Plan and the employer, who is the sponsor and administrator of the Plan, against the third party contract administrators. No party claims that the latter are fiduciaries, and obviously respondents do not come within any of the other categories of ERISA principals, such as employers, plans, or beneficiaries. (Memorial Hosp. System v. Northbrook Life Ins. Co., supra, *506 904 F.2d at p. 249.) Thus, the relationship between the parties is not one generally regulated by ERISA but, rather, one that “operates just like any other commercial entity.” (General American Life Ins. Co. v. Castonguay, supra, 984 F.2d at p. 1522.) The action does not impinge upon the administration of the Plan, that is, “its terms and conditions, funding, vesting, establishment, reporting, disclosure, enforcement, fairness, or distribution of benefits; . . . [Citations.]” (Duffy v. Cavalier (1989) 215 Cal.App.3d 1517, 1528 [264 Cal.Rptr. 740].) The maintenance of this litigation would not be expected to have any significant impact on the ability of Levi to properly administer the Plan. (Cf. Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. at pp. 139-140 [111 S.Ct. at pp. 482-484].) The only significant connection of this action with the Plan is that it seeks to recover damages caused by the overpayment of benefits, based upon the alleged misreading of an asset statement that resulted in an increased payment to Mr. Hansen. The action is not preempted based on this connection with the Plan, however, because “. . .no distinction is made between plan funds generally and those funds due a particular participant at a particular time,” and recovery of such funds may properly be sought. (Mackey v. Lanier Collection Agency & Serv., supra, 486 U.S. at p. 835 [108 S.Ct. at p. 2188].)
Furthermore, the causes pleaded encompass generally applicable state contract and tort law, which function irrespective of the existence of the Plan. The action, regardless of its outcome, will not result in an increased burden of compliance since it will not affect the “uniform body of benefits law” or place at risk ERISA safeguards that “ ‘completely secure the rights and expectations’ ” under this “closely integrated regulatory system.” (Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. at pp. 137, 142 [111 S.Ct. at pp. 482, 484].)
Given that “ ‘ “[t]he purpose of Congress is the ultimate touchstone” ’ ” (Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. at p. 138 [111 S.Ct. at p. 482]), we conclude that the action’s relation to and connection with the Plan are insufficient to support preemption.
We note that the Sixth Circuit reached a different answer on this question. In Zuniga v. Blue Cross and Blue Shield of Michigan (6th Cir. 1995) 52 F.3d 1395, defendants “departicipated” Dr. Zuniga from Blue Cross programs, asserting he had performed unnecessary medical procedures. Zuniga sued, and the parties reached a settlement. Under the agreement, Zuniga again became a participating physician, defendants agreed not to treat him differently than other health care providers, and defendants paid him $250,000 for personal injuries. (Id. at p. 1397.) Despite the agreement, defendants denied Zuniga preferred provider status for ERISA governed health care benefit *507 programs that served several auto manufacturers, asserting overutilization and excessive cost generation. Zuniga brought an action in state court alleging breach of the settlement agreement and denial of due process under both the Michigan and federal Constitutions, as well as other causes of action not pertinent. Blue Cross removed the case to the district court and eventually prevailed in a motion for summary judgment on the due process claim. The district court also dismissed the breach of contract cause of action. An appeal followed.
While the federal due process claim clearly presents a federal question and provides original federal question jurisdiction over that issue (28 U.S.C. § 1331), of importance to our discussion is the treatment of the state breach of contract cause of action. A divided court of appeal noted that the breach of contract cause of action alleged that Blue Cross “breached the settlement agreement by ‘resurrecting the previously refuted allegation’ of overutilization ‘as a reason for denial of his application to be an authorized provider for the [ERISA plan].’ ” (Zuniga v. Blue Cross and Blue Shield of Michigan, supra, 52 F.3d at p. 1401.) The majority held: “Clearly this claim ‘relates to’ an employee welfare plan as it explicitly ‘refer[s] to such a plan.’ ” The majority cited FMC Corp. v. Holliday (1990) 498 U.S. 52, 58 [111 S.Ct. 403, 407-408, 112 L.Ed.2d 356], an action brought by the employer seeking a declaratory judgment that it was entitled to subrogation for amounts it had paid for medical expenses of an employee’s daughter. FMC is readily distinguishable since it involves ERISA principals, relationships, and benefits.
Zuniga has been cited as authority on this point by one court: Bd. of Trustees of Local 25 v. Madison Hotel, Inc. (D.C. Cir. 1996) 97 F.3d 1479, 1487 [321 App.D.C. 145]. The case is distinguishable since it primarily relied on the fact that the action involved a settlement agreement between the employer-sponsor and benefit plan for payment of delinquencies and required application of ERISA law—that is, ERISA-governed principals and relationships were involved, unlike Zuniga. We believe the relationship analysis is the better route to ascertain proper application of preemption law.
Respondents claim Kyle Railways v. Pacific Admin. Services (9th Cir. 1993) 990 F.2d 513, is indistinguishable from the instant case and supports their position. We disagree.
In Kyle, an insurer refused the claim of its insured, employer Kyle Railways, under an aggregate excess loss policy. The insurer asserted that Kyle had incorrectly paid certain claims made against its ERISA health plan, *508 which, when subtracted from the total amount paid, resulted in an amount less than the policy deductible. Kyle brought an action in the United States District Court for the Northern District of California against Pacific Administration Services, as its third party administrator for the health plan, and other parties, alleging violation of fiduciary duties under ERISA and unjust enrichment as a result of nonfiduciary misconduct. The district court granted motions to dismiss, and Kyle sought relief on appeal. The Ninth Circuit affirmed. It concluded that “third party administrators like Pacific are not fiduciaries under ERISA when they merely perform ministerial duties or process claims. [Citations.]” (990 F.2d at p. 516.) With respect to Kyle’s claims of nonfiduciary misconduct, the court held there was no evidence that Pacific had been engaged in a “prohibited transaction” as defined by ERISA—the only grounds that would subject it to nonfiduciary liability under ERISA. (Id. at pp. 516-517.)
The portion of the Kyle opinion upon which respondents expressly rely addresses Kyle’s argument that ERISA as applied deprived Kyle of its property without due process, in violation of the Fifth Amendment. The court held: “The essence of Kyle’s claim is that by preempting any state law causes of action Kyle might have against the defendants, while failing to provide federal causes of action, ERISA has left a gap in the law. However, such ‘a gap is legitimate if it is the result intended by Congress.’ [Citation.] Kyle has failed to prove that Congress acted in an ‘arbitrary and irrational’ manner in adopting ERISA. [Citation.] Accordingly, we reject Kyle’s due process challenge.” (990 F.2d at p. 519.)
We note that Kyle is bereft of any mention that the employer had asserted claims under California law in either state or federal court. It may well be that the railroad assumed that such claims were preempted under ERISA, but in the absence of any discussion of the issue this case is not dispositive.
Respondents also cite Gibson v. Prudential Ins. Co. of America, supra, 915 F.2d 414. Prudential, a third party or contract administrator, “handled the initial review and investigation of claims, the initial determination of eligibility for benefits under the rules contained in the [ERISA] Plan, and the calculation and payment of benefits and approved claims with checks drawn on [employer] TRW funds." {Id. at p. 415.) Prudential was not an ERISA fiduciary. Plaintiff Gibson, a TRW employee, brought an action in California state court against Prudential and others who, she alleged, were involved in wrongfully denying her claim for disability benefits under the ERISA plan. Gibson’s theories included that Prudential had employed an illegal and improper definition of long-term disability and concealed this fact from Gibson, that the defendants had arranged or participated in a sham medical *509 examination, and that Prudential had breached the duty of good faith and fair dealing through the use of unreasonable claim controls. {Id. at p. 416.) Prudential successfully removed the matter to federal court (a second time), where summary judgment was granted in favor of defendants based on ERISA preemption and res judicata. Gibson appealed. {Ibid.)
The appellate court affirmed on the sole ground of preemption, stating: “All Gibson’s claims arise from her efforts to attain disability benefits under the Plan in 1982. Her complaint alleges violations of duties created by the administration of the disability benefit plan. She is not claiming that Prudential or the doctors had any duty to her outside the proper administration of the benefit plan. There would be no relationship or cause of action between the appellees and Gibson without the Plan. Thus, in this case, the claim originates from the handling and disposition of Gibson’s claim for disability benefits and is directly connected with the Plan.” (Gibson v. Prudential Ins. Co. of America, supra, 915 F.2d at p. 417 [the footnote stating that two of Gibson’s causes of action “directly deal with the definition of disability under the Plan and thus could not ‘relate to’ the Plan more directly. . . is omitted].)
Respondents in the instant case quote the above passage, arguing that it supports their position that all state law causes arising out of the handling and disposition of benefit claims are preempted under ERISA, including the claims herein. That construction of Gibson is overly broad. The plaintiff in Gibson was an employee suing for benefits, a situation clearly within ERISA purview. Furthermore, the authorities cited by Gibson in support of its position that ERISA preemption extends to common law tort and contract actions also involved actions by employee participants suing for benefits. (915 F.2d at p. 416; Pilot Life Ins. Co. v. Dedeaux, supra, 481 U.S. at p. 48 [107 S.Ct. at p. 1553] [employee sues insurer]; Ellenburg v. Brockway, Inc. (9th Cir. 1985) 763 F.2d 1091, 1095 [employee sues employer].) Although the preemption line is often difficult to draw, there is ample case law preempting state actions by employees to recover benefits, and the instant case is not in that category.
In Dearth v. Great Republic Life Ins. Co. (1992) 9 Cal.App.4th 1256 [12 Cal.Rptr.2d 78], also relied upon by respondents, a divided court held that ERISA preempted an action by a plan participant and his spouse that asserted state law claims for negligence and misrepresentation, among other causes, against the agent of an insurer. Although the action was by a principal entity under ERISA against a third party, a relationship similar to that under examination in the instant case, Dearth essentially was an attempt by a participant and beneficiary to recover benefits claimed under an ERISA plan, and distinguishable on that ground.
*510 Respondents also cite Hollingshead v. Matsen (1995) 34 Cal.App.4th 525 [40 Cal.Rptr.2d 603]. In that case, employee participants and beneficiaries of an ERISA plan brought an action against an insurance agent and broker, asserting state causes of action for negligence, fraud, breach of fiduciary duties, breach of oral contract, and intentional and negligent infliction of emotional distress, among others, based on the alleged failure of a recommended insurance plan to pay approved medical costs and services. Plaintiffs claimed they had been damaged in that they had incurred obligations for the medical costs and that outstanding medical bills had tarnished their reputations as financially responsible persons, causing emotional distress. The trial court granted defendants’ motion for summary judgment, concluding that the claims against the defendants “related to” the ERISA plan. On appeal, the court affirmed, concluding that the action was fundamentally a claim for unreimbursed benefits. {Id. at pp. 541-542.) Hollingshead is similar to the instant action in that it is brought by plan principals against a third party to recover ERISA funds. It, also, is distinguishable from the instant case on the basis that in Hollingshead the principals are participants and beneficiaries seeking to recover ERISA benefits, thus falling squarely within ERISA preemption law. (Cf. Pilot Life Ins. Co. v. Dedeaux, supra, 481 U.S. 41.)
Finally, respondents raise the issue of Levi’s standing to bring this action, noting that the second ground upon which the trial court sustained the demurrer was that Levi had failed to allege it had suffered damages as a result of respondents’ alleged acts and omissions, and therefore could not state a cause of action. We disagree. The complaint alleges a cause of action for breach of contract between “Dun & Bradstreet and Plaintiffs” and expressly prays for damages in connection with the breach of contract cause of action. The pleading is sufficient.
Disposition
The judgment is reversed and the matter remanded. Costs are awarded to appellants.
Vogel (C. S.), P. J., and Baron, J., concurred.

The “State laws” preempted include “all laws, decisions, rules, regulations, or other State action having the effect of law.” (ERISA, § 514(c), 29 U.S.C. § 1144(c)(1).)

ERISA, section 510 provides: “It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .” (29 U.S.C. § 1140.)

Other factors listed that are not relevant to the instant case are: “(1) Whether the state law regulates the types of benefits of ERISA employee welfare benefit plans; [1 (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law; HQ (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans.” (WSB Elec., Inc. v. Curry, supra, 88 F.3d at p. 794; see also Burch v. George (1994) 7 Cal.4th 246, 269-270 [27 Cal.Rptr.2d 165, 866 P.2d 92].)