Filed 3/12/13  Mental Health America of LA v. AstraZeneca Pharmaceuticals CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MENTAL HEALTH AMERICA OF LOS ANGELES,<br><br>　　　Cross-Complainant and Appellant,<br><br>　　　v.<br><br>ASTRAZENECA PHARMACEUTICALS LP,<br><br>　　　Cross-Defendant and Respondent. | B237803<br><br>(Los Angeles County<br>Super. Ct. No. YC060489)<br><br>**ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on February 13, 2013, and not certified for publication, be modified as follows:

1.  On page 18, the third sentence of the third full paragraph reads as follows:

A claim for equitable indemnity properly lies, where, as here, two parties are sued as joint tortfeasors, each alleged to owe a duty to the plaintiff.

It should read:

A claim for equitable indemnity properly lies where a defendant who has been sued brings in another party who is allegedly responsible for

plaintiff's action through a cross-complaint or by a separate complaint for equitable indemnification. It is of no moment that the underlying complaint did not name AstraZeneca as a joint tortfeasor and did not allege that AstraZeneca owed a duty to plaintiffs. Nor is it significant that MHA has not alleged that it and AstraZeneca were joint tortfeasors in the classic sense of that term. The doctrine of comparative equitable indemnity is available to apportion liability among wrongdoers based on their relative culpability provided only that the actions of the parties combined to create an indivisible injury to the plaintiff. (See, e.g., *Textron Financial Corp. v. National Union Fire Ins Co*. (2004) 118 Cal.App.4th 1061, 1078; *Newhall Land & Farming Co. v. McCarthy Construction* (2001) 88 Cal.App.4th 769, 773.)

Government Code section 68081 applies only where a decision is "based upon *an issue* which was not proposed or briefed by any party to the proceeding." (Italics added.) The issue in this case was whether the trial court erred in sustaining without leave to amend MHA's cross-complaint for indemnity and contribution against AstraZeneca. Government Code section 68081 does not require us to give the parties the opportunity to brief every authority that we may apply in deciding the issues in their case, so long as the parties have had the opportunity to brief the issues themselves. (See *People v. Alice* (2007) 41 Cal.4th 668, 677 ["[s]ection 68081 does not require that a party actually ha[s] briefed an issue; it requires only that the party had the opportunity to do so"].) AstraZeneca had a full opportunity to brief the issue of equitable indemnity, which was clearly and expressly alleged in MHA's cross-complaint. The petition for rehearing is denied.

The foregoing does not change the judgment.

PERLUSS, P. J.          WOODS, J.          ZELON, J.

2

Filed 2/13/13  Mental Health America of LA v. AstraZeneca Pharmaceuticals CA2/7 (unmodifed version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MENTAL HEALTH AMERICA OF LOS ANGELES, <br><br> Cross-Complainant and Appellant, <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS LP, <br><br> Cross-Defendant and Respondent. | B237803 <br><br> (Los Angeles County <br> Super. Ct. No. YC060489) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Cary Nishimoto, Judge.  Reversed.

Harrington, Foxx, Dubrow & Canter, Edward R. Leonard, Edward W. Lukas Jr., John D. Tullis and Daniel Kenney for Cross-Complainant and Appellant.

Kaye Scholer, Aton Arbisser and Joshua Stambaugh for Cross-Defendant and Respondent.

_____

This appeal had its inception in a wrongful death and survival action brought by plaintiffs, William Schultz and Carol Schultz, as a result of the death of their son. The action was filed against the following defendants: Dr. Michael Schwartz, Avis Rent-A-Car and numerous fictitious defendants, namely Does 1-60. Dr. Schwartz and Avis Rent-A-Car settled with the plaintiffs and their Motion for Good Faith Settlement was approved by the trial court on January 25, 2011. The death of plaintiffs' son occurred when Dr. Schwartz was driving to the airport in Los Angeles in a rented vehicle to go to Phoenix, Arizona to give a lecture to the staffs of mental health clinics in the Arizona counties of Maricopa and Pinal. Appellant, Mental Health America of Los Angeles ("MHA"), was brought into plaintiffs' action as Doe No. 11 on April 1, 2010, on the grounds that Dr. Schwartz was allegedly acting as an employee of MHA at the time of the accident thereby making MHA responsible to plaintiffs on the theory of *respondeat superior*. MHA contends there was no employment relationship with Dr. Schwartz at the time of the accident and he was being paid by an entity known as AstraZeneca ("AstraZeneca") which gave rise to a legitimate claim for indemnity, contribution and declaratory relief by MHA, which it raised by way of cross-complaint against AstraZeneca. The trial court found no duty was stated in the cross-complaint and sustained the demurrer of cross-defendant AstraZeneca without leave to amend, giving rise to this appeal by MHA. For the reasons hereafter stated we reverse the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

### Relationship between MHA and Dr. Schwartz.

MHA is a private, nonprofit organization serving the communities of Los Angeles County in helping people with mental illnesses reach their potential in the community. MHA utilizes a service plan known as the "Village Model." Dr. Schwartz entered into a contract with MHA on January 21, 2009, as an independent contractor, to provide psychiatric services 3-4 days per week at his discretion. He was paid by the hour to serve

as a psychiatrist for MHA.  All of Dr. Schwartz' work as a psychiatrist occurred at the Long Beach, California facility operated by MHA, or at the home of his patients in the Long Beach area.

Dr. Schwartz informed MHA that he would not be available to work on the day of the subject accident and was not scheduled for work by MHA on that day.  Although MHA has a business relationship with an organization known as Magellan of Arizona, a mental health facility located in Maricopa County, Arizona that provides mental health services for Maricopa County, MHA has never paid Dr. Schwartz to speak on behalf of the MHA Village Model of care to outside groups.  Dr. Schwartz has no involvement with MHA's business relationship with Maricopa County.  Only specific MHA employees were involved with MHA's work with Magellan, and Dr. Schwartz never performed any work on behalf of MHA with Magellan.  MHA never instructed, nor requested, that Dr. Schwartz speak with any mental health clinic staff in Arizona, both Maricopa County and Pinal County, inclusive.

### *Relationship between AstraZeneca and Dr. Schwartz.*

Dr. Schwartz had a contract in 2009 with AstraZeneca, a pharmaceutical company, to appear as a guest speaker to discuss AstraZeneca's products with interested physicians and nurses.  In 2009, a sales representative for AstraZeneca, Kathleen Carson, organized a guest speaker program with the Pinal Hispanic Council in Arizona, a non-profit mental health agency located in Pinal County, Arizona, to discuss AstraZeneca's product, Seroquel XR.  Judith Yurgel, representative of the Pinal Hispanic Council, agreed to the presentation and requested a guest speaker who could also answer questions regarding the "Village Model" of psychiatric services.  AstraZeneca contacted Dr. Schwartz, who agreed to be paid by AstraZeneca to travel to Arizona, and give a one hour lecture on the drug Seroquel XR, followed by questions and answers regarding the drug and the Village Model of care.  MHA did not consent to the AstraZeneca lecture by Dr. Schwartz before the Pinal Hispanic Council.  MHA was not a party to the contracts between AstraZeneca and Dr. Schwartz, or the Pinal Hispanic Council.  The lecture was scheduled for April 23,

3

2009. Dr. Schwartz notified MHA in advance of this date that he would not be providing any of his contract services to MHA on April 23, 2009.

### The April 23, 2009 Accident.

On April 23, 2009, at the time immediately preceding the accident, Dr. Schwartz was driving to the airport in Los Angeles in order to travel to Phoenix, Arizona, pursuant to his contract with AstraZeneca, as a guest lecturer before the Pinal Hispanic Council on that day. Dr. Schwartz was not going to Arizona at the request of MHA, and was not working nor conducting any business for or on behalf of MHA on the day of the accident. MHA did not pay for Dr. Schwartz to travel to Arizona and did not pay for the rental car Dr. Schwartz was driving at the time of the accident. Both of these expenses were paid by AstraZeneca. MHA did not sanction, approve, ratify or condone Dr. Schwartz's trip to Arizona. All of Dr. Schwartz's activities were under the auspices of AstraZeneca. The only activity Dr. Schwartz had scheduled for April 23, 2009, was to speak before the Pinal Hispanic Council, pursuant to his contract with AstraZeneca.

### Los Angeles County Superior Court action.

As previously indicated, plaintiffs filed their complaint in the Los Angeles County Superior Court as a wrongful death and survivor action, as a result of the death of their son who was struck by the car driven by Dr. Michael Schwartz which was rented from Avis-Rent-a-Car. In addition to Dr. Schwartz and Avis-Rent-A-Car being named as defendants, plaintiffs named numerous fictitious defendants as Does 1-60. Ultimately, Dr. Schwartz and Avis settled with plaintiffs and a good faith settlement was approved by the trial court on January 25, 2011. MHA was brought into plaintiffs' action as fictitious defendant Doe No. 11, on April 1, 2010.

### Cross complaint by MHA.

MHA filed a cross-complaint against AstraZeneca dated July 14, 2011, alleging, among other things, that MHA was entitled to indemnity, contribution, and declaratory relief against AstraZeneca and numerous fictitious cross-defendants sued as Roes 1-50.

4

AstraZeneca responded by serving a notice of appearance and demurrer to the cross-complaint, both dated July 12, 2011. The demurrer was heard on August 3, 2011, and following briefing by the parties, the court sustained AstraZeneca's demurrer and gave MHA 20 days leave to amend. The basis for the trial court's ruling was that MHA had failed to allege facts to demonstrate a legal duty of care or contractual obligation from cross-defendant, AstraZeneca, to cross-complainant MHA and MHA had failed to identify and name the causes of action in the body of the cross-complaint.

***MHA's First Amended Cross-Complaint.***

On August 23, 2011, MHA filed its First Amended Cross-Complaint (hereafter "FACC") alleging causes of action against AstraZeneca for indemnity, contribution, and declaratory relief, as well as additional facts related to the hiring of Dr. Schwartz by AstraZeneca to discuss the Village Model for the benefit of AstraZeneca.

On September 6, 2011, AstraZeneca again demurred to the FACC of MHA.

***Decision on AstraZeneca's demurrer to the FACC.***

After briefing on the matter, the trial court on October 4, 2011, sustained the demurrer of cross-defendant, AstraZeneca, to MHA's FACC without leave to amend. The basis for the court's ruling was that MHA had failed to allege facts to demonstrate a legal duty of care or contractual obligation from AstraZeneca to MHA.

MHA filed a timely notice of appeal contending that the court committed reversible error in sustaining the demurrer without leave to amend.

*APPELLATE CONTENTIONS*

MHA contends, stated in capsule format at this point, that the FACC was sufficient to allege that AstraZeneca owed a duty of care to MHA and the trial court committed reversible error in ruling AstraZeneca's demurrer was sustained without leave to amend. MHA maintains that AstraZeneca's failure to notify MHA that it was providing Dr. Schwartz as a speaker and failure to obtain MHA's consent had the consequences of reasonably leading plaintiffs to believe and assume that MHA should be included in its lawsuit as a Doe defendant third party.

5

AstraZeneca contends that the duty urged by MHA is unprecedented in its scope and would fundamentally change everyday legal relations, alter the entire nature of respondeat superior liability, and impose enormous burdens on any third party who might ask a particular employee to visit a premises or any other location. Accordingly, asserts AstraZeneca, the trial court committed no error and the judgment should be affirmed.

## STANDARD OF REVIEW

The standard of review on appeal pertaining to the sustaining of a demurrer in the trial court is well established. We set forth the principles involved with brevity hereafter. On appeal from an order dismissing an action after the sustaining of a demurrer this court is required to independently review the pleading (hereafter the FACC) and make a determination whether the facts alleged state a cause of action under any possible legal theory. (See *McCall v. PacifiCare of Cal., Inc* . (2001) 25 Cal.4th 412, 415.) Additionally, this court is required to construe the complaint liberally to determine whether, assuming the facts pleaded as true, a cause of action has been stated. (*Wallis v. Superior Court* (1984) 160 Cal.App.3d 1109, 1115.) If we determine the facts pleaded will support grounds on any legal theory of recovery, it is immaterial that the pleader may have misconceived the theory or the appropriate cause of action. (*Gomez v. Volkswagen of America, Inc.* (1985) 169 Cal.App.3d 921, 925.) Parties are entitled to any relief warranted by the facts pleaded and a failure to ask for the proper relief will not be deemed fatal. (*Rogoff v. Grabowski* (1988) 200 Cal.App.3d 624, 628.) Finally, in conducting our review of the pleading, we give the complaint a reasonable interpretation by reading it as a whole and its various parts in context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## DISCUSSION

We initially note that the arguments of counsel for both parties to this appeal engage in an extensive discussion of two California Supreme Court decisions in urging this court to resolve the appeal in their respective favor. The California decisions referred to are *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799 and *Christensen v. Superior*

6

*Court* (1991) 54 Cal.3d 868.  In analyzing the positions of counsel for the respective parties it is necessary to observe that the issue of *duty* considered in each opinion of our high court requires this court to perform an analysis of what the FACC contains with respect to the issue of duty.  Our analysis thus begins with the allegations contained in the FACC.  We further note that AstraZeneca takes umbrage with MHA's use of facts collateral to the actual wording contained in the FACC.  AstraZeneca objects to use of facts contained in documentation filed in conjunction with a summary judgment motion by MHA against plaintiffs in its capacity as a defendant in that action.  AstraZeneca's objection is noted and appears to be well taken.  We confine our analysis on the basis of what is stated in the FACC in accordance with the authorities set forth in our discussion of the "standard of review," *supra*.

### Allegations in the FACC pertaining to "duty."

MHA has pled the following facts which are accurately summarized in AstraZeneca's respondent's brief on appeal and quoted below.  The heart of the allegations are taken from paragraph 6 of the FACC, which is utilized to support all causes of action in the FACC, through the device of incorporation by reference.  We have, however, taken the liberty of inserting editorial additions for clarity.

"[AstraZeneca] is liable to the [MHA] because [AstraZeneca] hired MICHAEL SCHWARTZ to give a lecture on both [AstraZeneca]'s products and the [MHA]'s method of services, referred to as the 'Village Model,' to the Pinal Hispanic Council for the sole profit of [AstraZeneca], and under the sole authority of [AstraZeneca], and in doing so, [MHA] has been sued by Plaintiffs, and has suffered potential liability as a result of [AstraZeneca]'s actions. . . .

"Plaintiffs' suit against [MHA] is based upon the belief that the [MHA] profited from [AstraZeneca]'s actions; the belief that [MHA] benefited from [AstraZeneca's] actions; the belief that the [MHA] condoned, authorized, and/or consented to [AstraZeneca's] actions; and the belief that the [MHA] formed a business relationship with the Pinal Hispanic Council solely on the basis of [AstraZeneca]'s actions. . . .

7

"In hiring MICHAEL SCHWARTZ to discuss the 'Village Model, [AstraZeneca] lead [sic] . . . others, including plaintiffs, to believe that [MHA] condoned, authorized, and/or consented to MICHAEL SCHWARTZ discussing the 'Village Model' to the Pinal Hispanic Council. . . .

"In reality, [MHA] did not condone, authorize, nor consent to MICHAEL SCHWARTZ discussing the 'Village Model' with the Pinal Hispanic Council. . . .

"Throughout the first three causes of action in the FACC, MHA repeatedly alleges that if MHA is found liable under the allegations in Plaintiff's Complaint, then the 'negligent conduct of [AstraZeneca] . . . proximately contributed to the damage as alleged and described in the above-described Complaint.' . . . ('If it be found that this [MHA] was negligent under the allegations contained in plaintiff's Complaint . . . then . . . the negligent conduct of [AstraZeneca], and each of them, was active, primary, and affirmative . . . .').) All three purported 'causes of action' allege the same unspecified 'negligent' conduct, and the only difference between them is in the remedy sought: indemnity, costs of defending the underlying complaint, and contribution. . . .

"The Fourth Cause of Action seeks declaratory relief regarding both MHA's and AstraZeneca's respective liability in the case based entirely upon a comparative negligence theory. (*See* [FACC] ('The amount of negligence of [AstraZeneca] . . . which contributed to plaintiffs' damages, if any, should be declared . . . . [AstraZeneca] . . . [is] liable to cross-complainant on a comparative negligence basis.')[.]) The Fourth Cause of Action relies exclusively upon the facts and legal theories set forth in the first three causes of action set forth above."

### *The requirements set forth in <u>J'Aire Corp.</u>*

AstraZeneca contends that the *J'Aire* decision by our high court has no application to the facts involved in this appeal. AstraZeneca, however, contends that even if *J'Aire* applies in this case, MHA has failed to follow the dictates of *J'Aire* as set forth in the six factors listed by our high court requiring consideration. MHA, on the other hand, is adamant that *J'Aire* is applicable as a practical and general matter and that MHA has

8

fully complied with the six factors set forth therein to be applied in cases like the present one under scrutiny. We agree that the general principles set forth in *J'Aire* are applicable in this case.

With these preliminary thoughts in mind, we proceed to determine whether the FACC contains allegations that satisfy the six factors prescribed by our Supreme Court. In discussing and quoting from *J'Aire* the high court's statements are described as pertaining to "plaintiffs and defendants" but we understand that such references are equally applicable to "cross-complainants and cross-defendants" as in this case. Our Supreme Court has stated in *J'Aire*: "[l]iability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member. [Citation.] . . . [A] duty of care may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society. [Citation.] Whether a duty is owed is simply a shorthand way of phrasing what is '"the essential question – whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" [Citation]." (*J'Aire Corp. v. Gregory, supra,* 24 Cal.3d at p. 803.)

To be more specific as to the requirements set forth by the Supreme Court in *J'Aire,* six factors are to be considered as follows: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm. We now examine the FACC in light of the six factors set forth in *J'Aire.*

*(1) The extent to which the transaction was intended to affect MHA.*

*J'Aire* concerned a dispute between a contractor and a property owner. The property owner had tenants in the building which were affected by the contractor's deficiencies in finishing renovations. In *J'Aire*, our high court held that the tenants had

9

standing to sue as third parties regardless of the fact they were not parties to the contract between the contractor and the property owner in view of their strategic position in the disputed property as tenants.

MHA contends the reasoning of the trial court was wrong when it stated: "[w]hile certainly Schwartz's involvement in the Village Model may have arisen during Schwartz's lecture, it is certainly more likely that a major pharmaceutical company such as cross-defendant would hire Schwartz to speak primarily regarding its products. In any event, while it is possible that Schwartz's lecture would affect cross-complainant, whether the intent of the lecture was to affect cross-complainant is unlikely."

MHA maintains the court's language evidences that it was weighing the fact itself, which is improper, instead of simply determining whether this factor was satisfied by allegations contained in its cross-complaint just as required by *J'Aire.*

AstraZeneca, on the other hand, counters by opining that MHA has failed to include any allegations in its FACC pertaining to any intent on the part of AstraZeneca that it intended to affect MHA by its conduct. Instead of pointing to any allegations in the FACC, AstraZeneca contends MHA manufactures facts in support of this factor. We agree with AstraZeneca that the cross-complaint is void of any facts which would support the first factor of intentional conduct on the part of AstraZeneca to affect MHA and we so hold.

   *(2)  The forseeability of harm to MHA.*

The second factor listed by our Supreme Court in *J'Aire* pertains to the question of the foreseeability of the harm to MHA. The Supreme Court noted that if the defendant's actions were intentional, then it naturally followed that the harm was foreseeable. MHA additionally contends it should be noted that "[t]o the extent that the existence of a duty of care turns on conflicting evidence as to the reasonable foreseeability of injury, the question may be one for the jury," citing *Raymond v. Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1 as authority. MHA maintains the trial court's responsibility was not to decide the weight to be given on the issue of foreseeability but rather to

10

determine whether the facts were sufficiently pled in the FACC. At the pleading stage, says MHA, the trial court erred by making a determination as to foreseeability, which, under *J'Aire* should either flow from the fact that the act was intentional, or left to the jury at trial as a question of fact.

MHA concludes its comments on the second factor by stating it is undoubtedly foreseeable that should a company hold an event and promise to both discuss the company's products and a third party's service or product, that others would believe that the third party was involved in a meaningful way with the event. Again, MHA emphasizes AstraZeneca purposefully sought out a speaker who could answer questions about the "Village Model" to speak to the Pinal Hispanic Council as a part of AstraZeneca's sales pitch for its product Seroquel. It was foreseeable that MHA could be affected by such actions and plaintiffs could have reasonably presumed that MHA was involved and therefore liable for the torts of MHA's alleged employee, Dr. Schwartz. MHA is emphatic in suggesting that there is no question that the underlying lawsuit here is direct evidence that MHA could have and did suffer harm because of AstraZeneca's conduct. If AstraZeneca had not requested that Dr. Schwartz come to Arizona then Dr. Schwartz would not have been traveling to the airport at the time of the subject accident, which means there would have been no accident and no lawsuit.

AstraZeneca initially addresses the second factor by requesting this court to focus on the actual allegations contained in the FACC. AstraZeneca urges this court to observe that the FACC does not even employ the word "foreseeable" or otherwise address forseeability as to MHA's allegation of alleged harm. AstraZeneca urges it is simply not reasonably foreseeable that (1) Dr. Schwartz would not tell MHA, his existing colleagues and operators of the "Village" that he was going to promote their mental health practices; (2) MHA would have prohibited Dr. Schwartz from attending the presentation if he did tell them; and (3) Dr. Schwartz would get into a fatal accident on the way to the airport.

Moreover, asserts AstraZeneca, it could not have been expected to anticipate that Dr. Schwartz would be deemed an employee of MHA who was acting in the course and

11

scope of his employment when he had the accident. AstraZeneca further observes that MHA has always maintained that this was not the case. Now, contends AstraZeneca, this determination will never be made because MHA has settled the underlying claim against it. Relying on *Conte v. Wyeth Inc.* (2008) 168 Cal.App.4th 89, 104-105, AstraZeneca opines that "when there is no room for a reasonable difference of opinion [foreseeability] may be decided as a matter of law."

This court concludes that as to the second factor under *J'Aire*, the FACC does not contain sufficient allegations of reasonable foreseeability of harm to MHA by AstraZeneca's actions, and we so hold.

> *(3) The degree of certainty that MHA suffered injury.*

As relevant to the third factor, the trial court noted that "[s]ince the gravamen of [MHA's] action is based on indemnity, this factor is not applicable presently." The trial court seemed to be of the view that if MHA was not found liable on the underlying complaint through *respondeat superior*, it would not be injured in the manner alleged in the complaint, and MHA would have no basis to seek indemnity or contribution from AstraZeneca. In other words, MHA has alleged that it only faces potential liability in the underlying plaintiff's action. In its cross-complaint, MHA complains that "If cross-complainant is found to be responsible in any way under allegations contained in plaintiff's Complaint . . . then this cross-complainant is informed and believes . . . that the conduct of [AstraZeneca] . . . proximately contributed to the damage. . . ."

This court observes, as did the trial court, that MHA has now settled the underlying claim against it by plaintiffs. Consequently, it appears to this court that MHA has incurred an obligation to plaintiffs for which it can claim contribution from AstraZeneca.

MHA has also alleged in the FACC an alternative approach to liability and damages, namely, that in view of the fact that it has already been sued, it has already been damaged thereby giving rise to an entitlement to implied indemnity as well as reasonable attorney's fees and court costs in defending the underlying action. AstraZeneca

12

maintains, however, that in a claim for implied indemnity an indemnitee can only recover attorney's fees against the indemnitor if the indemnitor was properly notified of the demand to . . . provide a defense and did not avail itself of the opportunity to do so and the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnittee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict. In stating this proposition AstraZeneca relies on Code of Civil Procedure section 1021.6, subdivisions (b), and (c). AstraZeneca asserts that neither of these events has occurred, and therefore there is no basis for MHA to claim that it has already been injured.

MHA counters by relying on Code of Civil Procedure section 428.10 permitting any defendant to join another alleged tortfeasor by cross-complaint seeking total or partial indemnity without a requirement that the party seeking indemnity must first pay any alleged damages owed beforehand. All that is required to defeat a special demurrer, contends MHA, is that the essential facts of its case be pled with reasonable precision and with particularity sufficiently specific to acquaint defendant of the nature, source, and extent of the cause of action, relying on *Gressley v. Williams* (1961) 193 Cal.App.2d 636, 643-644.

This court finds that MHA properly relied on Code of Civil Procedure section 428.10 in seeking indemnity from AstraZeneca and we so hold.

*(4) The closeness of the connection between the defendant's conduct and the injury suffered.*

MHA reiterates its contention that the trial court was engaged in an improper determination of fact in its ruling involving the fourth factor. The language which MHA finds erroneous is stated by the trial court as follows: "[t]here is minimal or no connection between [cross-defendant's] conduct and the injury suffered. There is minimal or no connection between any injury suffered by cross-complainant or plaintiff and cross-defendant's conduct. Cross-def [sic] simply hired Schwartz to speak. The fact that Schwartz was involved in an auto accident on his way to the airport does not reveal

13

any close connection between the conduct of cross-def [sic] and the injury." MHA concludes by contending the trial court exceeded its authority by making a determination that closeness did not exist. Further, contends MHA, such a determination by the court undercut its right to have fault allocated in accordance with comparative fault established by the California Supreme Court in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 and as codified in Civil Code section 1421.2.

AstraZeneca counters by asserting that MHA is merely resting its case upon principles of but-for causation. AstraZeneca maintains MHA should instead be focusing on the actual correlation between AstraZeneca's conduct and MHA's injury, and its claims that AstraZeneca is solely responsible for MHA being brought into plaintiffs' lawsuit because it hired Dr. Schwartz to speak concerning the "Village Model" and faces potential liability. AstraZeneca repeats that this is merely a but-for causation argument and does not satisfy the principles of *J'Aire* or lead to a conclusion that a duty of care should be created in this case.

We are persuaded that the contention advanced by MHA complaining that the trial court engaged in an improper fact finding analysis when considering the fourth factor under *J'Aire* has merit. However, the connection between AstraZeneca's conduct and MHA's alleged harm can only be described as strained at best militating against a favorable finding involving factor No. 4 and we so hold.

*(5) Moral blame attached to AstraZeneca's conduct.*

MHA's argument is duplicative of its contentions as stated pertaining to factor No. 4 of *J'Aire,* namely, the trial court exceeded its authority by evaluating facts as to whether something is or is not likely, instead of determining whether minimal pleading requirements were contained in the FCAA. MHA contends that factor No. 5 was satisfied by virtue of AstraZeneca's dealing with the Pinal Hispanic Council in setting up the guest lecture with Dr. Schwartz. MHA asserts that in reality the guest lecture on Seroquel was a ruse to provide a speaker who could also discuss the "Village Model." Thus, urges MHA, AstraZeneca was seeking to sell its products, regardless of any

14

detriment to others, including MHA. The fact that AstraZeneca sought to grow its brand by using another's name, without permission, should not be tolerated and is blameworthy.

AstraZeneca counters with the argument that there are no allegations in the FACC that reference, either directly or indirectly, an element of moral blameworthiness. The FACC merely states that AstraZeneca hired Dr. Schwartz to speak as a guest lecturer, and MHA only observes and speculates that AstraZeneca's purpose behind its guest lectures is to sell its products to prospective customers. However, argues AstraZeneca, a statement that a company was interested in operating its business is insufficient to create a duty owed to MHA under the circumstances of this case. AstraZeneca argues further that MHA is once again fabricating certain facts in support of its argument on the fifth factor including the fact that Dr. Schwartz's was hired on the grounds that AstraZeneca would also provide a speaker who could discuss the Village Model. AstraZeneca opines that there is no such allegation in the FACC. AstraZeneca urges that the trial court correctly found that any moral blame in this situation is negligible or nonexistent. AstraZeneca urges, and we agree, that the trial court correctly found that any moral blame in this situation is negligible or nonexistent and we so hold.

*(6) The sixth and final factor pertains to prevention of future harm.*

MHA is critical of the trial court's holding that "[a]ttaching a duty of care to cross-defendant under these facts would not prevent any future incident considering the lack of foreseeability. Rather, it would open up potential liability to other companies who simply wishes [sic] to have an individual speak on behalf of their company." MHA contends that the holding of the court on this factor constitutes an oversimplification of the facts. MHA reasons as follows: the presentation of Dr. Schwartz was not simply about the drug Seroquel but was also connected with MHA's "Village Model"; AstraZeneca sought to sell its products by using another company's proprietary service method to its advantage; had the lecture gone forward and false information about the Village Model been shared, MHA would have a cause of action for misrepresentation

15

against AstraZeneca because its agents acted deliberately in providing a guest speaker to discuss both Seroquel and the Village Model; as such, the state has a strong policy in preventing this type of harm from occurring to others; if companies who stand to benefit from use of a third-party's name, product, or service at an event are required to obtain permission from that third-party, or at least disclaim the third-party's association with the event and involved companies, the situation present here can be avoided; clearly this is not too much to ask and a policy requiring such action would be in line with California's Unfair Competition Law as found in Civil Code section 17200 et seq.

AstraZeneca's counter argument is brief and can be stated as follows: if MHA is found liable in the underlying action then the trier of fact will have made a determination that MHA is an employer and must account for the actions of an employee acting in the course and scope of employment. Thus, the harm to MHA will have already been determined without regard to AstraZeneca's actions with the consequences that in such cases an untenable burden would be placed on third parties to constantly and vigilantly inquire as to the nature of each and every representative's employment relationship and will do nothing to abate this harm.

We are persuaded that an untenable burden would indeed be placed on third parties as contended by AstraZeneca. We find the argument by MHA on the 6th factor under *J'Aire* to be unpersuasive and we so hold.

We find that only factor No. 3 pertaining to the degree of certainty that MHA suffered injury has been demonstrated. With only one of the six factors under *J'Aire* having been established, we find no grounds to find a legal duty by AstraZeneca to MHA and we so hold.

### *Relevance and impact of <u>Christensen v. Superior Court</u> on the duty issue.*

As previously indicated in this opinion, we find that MHA has not alleged sufficient facts in the FACC to comply with the standards set forth by our high court in *J'aire*. Relying on our high court's decision in *Christensen v. Superior Court, supra,* 54 Cal.3d 868, MHA does appear to be adopting a fallback position in stating: "To the

16

degree that this Court finds that the first factor described in *J'Aire, supra* (*i.e.*, the extent to which the transaction was intended to affect the plaintiff), or other described criteria, was not properly pleaded in MHA's Cross-Complaint, other California case law establishes that the test is a factors test, and that it is not all inclusive. (*See Christensen v. Superior Court*, (1991) 54 Cal.3d 868, 885-886.)" MHA invites this court to make a comparison of *J'Aire* with *Christensen* and come to a conclusion that *Christensen* in effect adds an additional factor, namely, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. MHA contends that its reasoning leads to the conclusion that the burden on a defendant to request permission to use another company's proprietary information, or at least provide a disclaimer that the other company is in no way involved is minimal. MHA argues further that the community would benefit greatly from open communication between companies with regard to the use of each other's proprietary information. It is unclear how requiring parties to request permission or issue a disclaimer could be detrimental.

AstraZeneca counters by maintaining that the high court in *Christiansen*, contrary to MHA's contentions, did indeed apply the *J'Aire* factors in reaching its conclusions and the *Christensen* decision serves to bolster the position taken by AstraZeneca in these proceedings. AstraZeneca reiterates the facts in *Christiansen* as involving a class action brought by relatives and representatives of decedents against mortuaries, crematoria, and a biology supply company for mistreatment of the decedents' remains, removing valuables from the decedents, commingling ashes with other remains, and selling body parts to the biological supply company. In reviewing the question of which plaintiffs had standing to sue, the Supreme Court ruled that the defendants owed a duty to those close family members who were aware that funeral and/or crematory services were being performed, and on whose behalf or for whose benefit the services were rendered. The

17

court held that "Defendants here assumed a duty to the close relatives of the decedents for whose benefit they were to provide funeral and/or related services."

AstraZeneca maintains that the *Christiansen* court did not engage in a lengthy discussion of the first factor, as it did with other factors, but the decision explicitly cites to all of the *J'Aire* factors, as stated on page 891 of our high court's decision. Thus, says AstraZeneca, there is no reason for this court to ignore the utter lack of intent on behalf of AstraZeneca to affect MHA under the circumstances in this case. AstraZeneca concludes that the *Christiansen* opinion reaffirmed the principles in *J'Aire* that in order for a duty to be owed, there must be a special relationship between parties and the relationship between the mortuaries and the decedent's relatives is a far cry from the attenuated and legally insignificant relationship between two unrelated entities such as AstraZeneca and MHA as set forth in the facts contained in the FACC.

We conclude that the *Christiansen* decision by the California Supreme Court does not require this court to alter its opinion that the FACC is factually insufficient to defeat the order of the trial court sustaining AstraZeneca's demurrer when the six factors under *J'Aire* are considered and applied to the facts of this case and we so hold.

### The FACC states a cause of action for equitable indemnity.

Although the trial court correctly determined that AstraZeneca owed no duty to MHA, that is not the end of the inquiry. The FACC alleged, as set forth above, that MHA sought indemnity on an equitable basis, in the event it were found to be liable to the plaintiff. (FACC, para. 9.) A claim for equitable indemnity properly lies, where, as here, two parties are sued as joint tortfeasors, each alleged to owe a duty to the plaintiff. The fact that they owe no duty, or contractual obligation, to each other, does not preclude an equitable allocation of damages between them. (See, e.g., *Willdan v. Sialic Contractors Corp.* (2007) 158 Cal.App.4th 47, 55-56 citing *GEM Developers v. Hallcraft Homes of San Diego* (1989) 213 Cal.App.3d 419 [equitable indemnity entitles defendants to "seek apportionment of loss between the wrongdoers in proportion to their relative

18

culpability . . . ."].)  MHA properly alleged its entitlement to this relief, and on this basis, the demurrer was improperly sustained.

## *DISPOSITION*

The judgment is reversed and remanded for further proceedings not inconsistent with this opinion.  Appellant to recover costs of appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**