Filed 4/26/16  P. v. Butler CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>PERRY C. BUTLER,<br><br>  Defendant and Appellant. | B260912<br><br>(Los Angeles County<br> Super. Ct. No. MA061880) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric P. Harmon, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Perry C. Butler (who represented himself at trial) of one count each of identity theft (Pen. Code, § 530.5, subd. (a))[1] and false personation (§ 529, subd. (a)(3)). The trial court found true the allegations that defendant had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior prison term (§ 667.5, subd. (b)), and sentenced him to a term of five years in state prison. Defendant appeals from the judgment of conviction, contending: (1) the evidence is insufficient to support his identity theft conviction, and (2) the trial court erred in excluding evidence of an out-of-court statement of consent by defendant's brother, whose identifying information defendant used. We affirm the judgment.

## BACKGROUND

*Prosecution Evidence*

On March 1, 2013, around 8:50 a.m., defendant was driving a Chevrolet Suburban and made an illegal turn at Avenue K and Division Street in Lancaster, in violation of Vehicle Code section 21651, subdivision (a)(2). He was stopped by Los Angeles Sheriff's Deputy Monty Buckallew, a motorcycle traffic enforcement officer. One of defendant's brothers, John Terry Butler, was the front passenger.

Deputy Buckallew video recorded the encounter, with audio sound, using the camera on his helmet. The recording was played for the jury, and a transcript was provided.

When Deputy Buckallew asked for defendant's driver's license, defendant said he did not have it on him (he denied it was suspended, though in fact it was). Defendant admitted his illegal turn, but asked the deputy to give him a break.

---

[1]     Undesignated section references are to the Penal Code.

2

Deputy Buckallew agreed to issue a citation only for the turn and to overlook defendant's failure to have his license. In response to the Deputy's questions in filling out the citation, defendant identified himself using the name of another brother, Turhan Scott Butler, with an address on Caspian Drive in Lancaster and a birthday of August 23, 1965. He said he did not know his driver's license number. When Deputy Buckallew asked defendant's brother John (the passenger) for defendant's name and birthday, he gave the name Turhan Butler with a birthday in April. When asked about the discrepancy in birthdates, defendant said that he was nervous, and that his birthday was actually April 23, 1965. He assured the deputy that he was not giving false information, and signed the citation with an illegible signature.

The citation for violating Vehicle Code section 21651, subdivision (a)(2), carries a $100 fine and two traffic violation points. Nearly three weeks later, on March 25, 2013, a person who was not defendant came to the Palmdale Sheriff's Station and presented photo identification to the watch commander, Lieutenant Kenneth Wright. Lieutenant Wright took a photograph of this person, sent it to Deputy Buckallew, and asked him to investigate the traffic citation earlier issued to defendant. Deputy Buckallew compared the photograph to the video recording of the traffic stop, and determined that the photograph did not depict the person to whom he had issued the citation.

*Defense Evidence*

Defendant testified that he had returned to the Lancaster area to visit his father, who has Alzheimer's disease. At the time the citation was issued, defendant's license had been suspended. He identified himself as his brother Turhan because he had had prior bad experiences with the police, had been to

3

prison, and did not want to use his real name. Nonetheless, when he signed the citation, he signed in his own name.

## DISCUSSION

I. *Sufficiency of the Evidence*

Defendant contends that the evidence is insufficient to support his conviction of identity theft, in that it failed to prove he did not have his brother Turhan's consent to use Turhan's identity. We disagree. Of course, we review the entire record in the light most favorable to the judgment, and presume in support all inferences in support of the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Section 530.5, subdivision (a), provides in relevant part: "Every person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose . . . without the consent of that person, is guilty of a public offense." Here, using CALCRIM No. 2040, the jury was instructed in relevant part that to prove a violation of section 530.5, subdivision (a), the prosecution was required to prove: "1. The defendant willfully obtained someone else's personal identifying information; [¶] 2. The defendant willfully used that information for an unlawful purpose; AND [¶] 3. The defendant used the information without the consent of the person whose identifying information he was using." The instruction explained that "[s]omeone commits an act *willfully* when he or she does it willingly or on purpose." It also explained that "[a]n *unlawful purpose* includes unlawfully obtaining information to avoid arrest for driving while his license was suspended without the consent of the other person."

Thus, in substance, the prosecution was required to prove that defendant willfully obtained and used Turhan's identifying information for an unlawful

4

purpose, defined as obtaining information to avoid arrest while driving with a suspended license, without Turhan's consent. In this context, and under the evidence presented, the scope of the consent at issue was quite specific: consent to give Turhan's identifying information to any police officer who might issue defendant a citation for committing a Vehicle Code violation while driving, in order to avoid defendant's arrest for driving on a suspended license.[2] In proving that Turhan did not give such consent, the evidence was simply overwhelming.

First, as a matter of common sense, it was highly improbable that Turhan would have given defendant such consent. That consent would have entailed: (1) consent to use his identifying information to commit the crime of giving false information to a police officer (§ 148.9), a crime for which Turhan himself might be criminally liable as an aider and abettor, (2) for the illegal purpose of allowing defendant to escape liability for driving with a suspended license (Veh. Code, § 14601), another crime for which Turhan might be criminally liable as an aider and abettor, (3) with the result that Turhan would be personally liable for any traffic violation defendant might commit (here, a fine of $100 for violating Veh. Code, § 21651, subd. (a)(2)), and (4) would receive against his driving record any points attributed to that violation (here, two violation points). No matter how

---

**2** We question whether, as a matter of public policy, any consent defendant's brother might have given was a valid defense to an identity theft charge. Just as one cannot validly contract to prevent disclosure of information that is required to be disclosed as a matter of law (*Picton v. Anderson Union High School Dist.* (1996) 50 Cal.App.4th 726, 733-734), it would be anomalous for section 530.5, subdivision (a) to contemplate a defense based on consent to permit another person to violate the law by not giving identifying information to a an officer issuing a traffic citation. However, this issue was not raised below, and was not briefed by the parties. Because we affirm the judgment on other grounds, we do not discuss it further.

much brotherly devotion Turhan might have felt, the notion that he would have given such consent is difficult to imagine.

Second, there was compelling evidence that Turhan did not give such consent. Nearly three weeks after the citation was issued, a person who was not defendant came to the Palmdale Sheriff's Station and presented photo identification to the watch commander, who took a photograph of this person, sent it to Deputy Buckallew, and asked him to investigate the traffic citation issued to defendant. Deputy Buckallew compared the photograph to the video recording of the traffic stop, and determined that the photograph did not depict the person to whom he had issued the citation. The only reasonable inference from this evidence was that Turhan had received the citation information, and came to the Sheriff's station to complain that someone must have used his identity. This inference compelled the next inference: Turhan had not given defendant consent to use his identifying information in the manner in which he used it.

Finally, the evidence of defendant's traffic stop supported a finding that defendant used Turhan's identity without his consent. Defendant did not know Turhan's driver's license number, and was uncertain as to Turhan's birth date. He initially gave Deputy Buckallew a birthday of August 23, 1965. Then, when the deputy told him that that John said Turhan's birthday was in April, defendant said, "It probably is April, I'm just nervous." Defendant then gave a birth date of April 23, 1965. Had Turhan had given defendant consent to use his identifying information on a traffic citation, it is reasonable to expect that defendant would have been more familiar with that information and would have been prepared to use it.

In short, the evidence was more than sufficient to prove that defendant did not have consent to give Turhan's identifying information to any police officer

6

who might issue a defendant citation for committing a Vehicle Code violation while driving, in order to avoid defendant's arrest for driving on a suspended license.

II. *Exclusion of Turhan's Purported Consent as Hearsay*

Defendant contends that the trial court erred in excluding as hearsay an out-of-court statement in which Turhan purportedly gave defendant consent to use his identifying information. We find no prejudicial error.

Before the evidentiary portion of the trial began, outside the jury's presence, the prosecutor noted that "defendant made some comments during jury selection about allegedly making an agreement or obtaining consent from his brother." The prosecutor argued that "[a]ny such statement is hearsay," and moved to prohibit defendant from "from mentioning that, unless he plans to call Turhan Butler to testify as such."

Defendant (representing himself) responded "It's the defense's position . . . that he [defendant] did, in fact, have consent from his brother, and it's not hearsay if it was directly told to . . . the defendant." The trial court explained that defendant's theory of nonhearsay was incorrect: "[H]earsay is an out-of-court statement that's offered for the truth of the matter asserted. So even if it was told to you, if it was out-of-court and if it was meant for the truth of the matter asserted, then it's hearsay, and it's not admissible, unless there's an exception." The court noted that it could not do defendant's "job . . . in terms of arguing the admissibility of it," and asked if defendant could "think of any reason that . . . it would not be for the truth of the matter asserted, or, . . . there's an exception to the hearsay rule?" Defendant said he did not, but might at some later point. The court then ruled that "until and unless – that objection is sustained."

7

After other matters were discussed, defendant raised the issue of Turhan's consent again. As the court explained, the prosecution's objection was that an out-of-court statement by Turhan giving consent was hearsay if offered to prove the fact of consent. The court asked, "And your response to that is what?" Defendant replied that "under 801 [*sic*] I should be allowed to bring that in. It's not for the truth of the matter asserted, but it's for the purpose of what I believed in the conversations that I had, and I believe on that basis, I can argue to the jury as to what I believe, not necessarily to what my brother said, but as a result of the conversation that I had with my brother, I believe that I had consent." The court replied that "whether you believed you had consent is not relevant. What's relevant is whether you did, in fact, have consent, whether that person actually gave you consent." The court concluded: "If you want to prove that you did have consent to rebut that, then that's fine, but you can only do that through competent evidence. It's not competent to say that I thought I had it. There has to be evidence that you did, in fact, have it."

On appeal, defendant contends that the trial court erred in excluding evidence of Turhan's out-of-court consent. We agree, but the error was not prejudicial.

"'[O]ral words of consent . . . are not hearsay because they are not offered to prove the truth of any matter asserted in the oral . . . statements. The words of consent are relevant as words of authorization. They are, therefore, nonhearsay and they become relevant to the issue of consent . . . merely from the fact that the words are spoken. [One's] internal state of mind is not relevant on the issue of consent. It is the saying of the words of consent that is the issue involved, just as the saying of the words of a contract is nonhearsay and becomes the relevant issue involved to determine whether there is a contract.'" (*People v. Nelson* (1985) 166

8

Cal.App.3d 1209, 1215 [involving consent to search]; see *People v. Burnham* (1986) 176 Cal.App.3d 1134, 1144, fn. 10 [in rape prosecution, victim's statement of consent is admissible "for the specific nonhearsay purpose of proving the defendant had reason to believe the victim consented [citation] and for the additional purpose of proving the victim consented"].)  Thus, the trial court was incorrect in excluding Turhan's purported out-of-court consent as hearsay.[3]

Respondent contends that the court properly excluded the evidence by impliedly finding that defendant did not establish the preliminary fact that Turhan had indeed made the statement as represented by defendant.  Respondent relies on the court's isolated comment that  "[i]t's not competent to say that I thought I had it [referring to Turhan's consent].  There has to be evidence that you did, in fact, have it."  It is true that "[w]hen evidence is offered under one of the hearsay exceptions, the trial court must determine, as preliminary facts, both that the out-of-court declarant made the statement as represented, and that the statement meets certain standards of trustworthiness." (*People v. Cudjo* (1993) 6 Cal.4th 585, 608.)  But the comment on which respondent relies was not a finding that the statement

---

[3]    Respondent argues that defendant forfeited his contention that the evidence was admissible for a nonhearsay purpose to prove consent, because he did not seek to admit the evidence for such a purpose.  However, in the first colloquy on the admissibility of the evidence, defendant stated:  "It's the defense's position, Your Honor, that he [defendant] did, in fact, have consent from his brother, and it's not hearsay if it was directly told . . . to the defendant."  The court replied that even if it was told to defendant, it was hearsay if it was to be used to prove the truth of the matter asserted – that is, Turhan's consent.  Although defendant was not particularly artful in his explanation, he adequately articulated the position that Turhan had given him consent, and that consent was not hearsay.  The court rejected that theory, ruling that if the out-of-court statement was admitted to prove the fact of consent, it was by definition hearsay.  That ruling was incorrect.  We conclude that the point was preserved.

was not made; it was the court's way of explaining that defendant's *belief* that he had consent was not the same as proof that he did *in fact* have consent.

However, although the trial court erred, the error was not prejudicial, even if viewed under the harmless-beyond-a-reasonable-doubt standard for federal constitutional error. (*Chapman v. California* (1967) 386 U.S. 18, 24.)[4] As we have noted, the scope of consent at issue was quite specific: consent to give Turhan's identifying information to any police officer who might issue defendant a citation for committing a Vehicle Code violation while driving, in order to avoid defendant's arrest for driving on a suspended license. Although defendant stated, "It's the defense's position . . . that he [defendant] did, in fact, have consent from his brother," defendant never made an offer of proof concerning what his brother purportedly said, and how it was sufficient to show the scope of consent at issue. (See *People v. Whitt* (1990) 51 Cal.3d 620, 648-649 [to assess prejudice from erroneous exclusion of evidence under *Chapman*, the appellate court must know substance or content of the excluded evidence].) Further, as we already have explained, the evidence that such consent was not given was overwhelming. Therefore, the record demonstrates beyond a reasonable doubt that the court's error in excluding purported, unspecified evidence of statements by Turhan giving defendant consent to use his identifying information did not contribute to the verdict. In other words, the error was "'unimportant in relation to everything else

---

[4] The California Supreme Court has recognized that generally errors of state law in excluding evidence do not rise to the level of federal constitutional error. "Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103.) Because we find the error harmless even under the *Chapman* standard, we do not decide whether the court's evidentiary error violated defendant's right to present a defense.

the jury considered on the issue in question, as revealed in the record,'" and the "'verdict actually rendered in this trial was surely unattributable to the error.' [Citation.]" (*People v. Neal* (2003) 31 Cal.4th 63, 86.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.

11